William M. Beall and Theresa McElfresh, Adm'r. of
John H. McElfresh, *vs.* George Schley, David Barr
and Christina Barr.—*December,* 1844.

M, by his last will, devised to one of his three sisters, certain real estate in
fee, and constituted her his residuary legatee, and devisee; he bequeathed
to her all his "money, choses in action, and all the rest, residue, and remain-
der of my (his) property, real, personal and mixed, (not hitherto devised or
bequeathed,) of which I am now possessed, or of which I may be possessed,
at the time of my death, to her, her heirs and assigns, forever." M. also de-
vised real and personal estate, in trust, for his other two sisters.   After the
publication of this will, the testator purchased other real estate, and
died without republishing it.   Held, that the two sisters, who took
trust estates, could not also claim as heirs at law, their proportion of the
after acquired estate; which, in this case passed under the residuary clause·
No person will be compelled to make an election unless the intention of the
testator be sufficiently made out.   There never can be a case of implied
election, but upon a presumed intention of the testator.
The degree of intention necessary to raising a case of election, must plainly
appear on the face of the will.
Where a testator declares in express terms his design to make T. his residu-
ary devisee, and explicitly announces of what, by devising to her the re-
mainder of the property of which he was *then* possessed, or of which he
might be possessed, *at the time of his death;* this is evidence of his inten-
tion to devise all the estate of which he might die possessed; and upon
the equitable principles of election, is a devise to that extent.

The doctrine of equitable election is as applicable to an heir at law, as to other devisees; and may result, either from an express, or an implied condition.

A man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument; if he claims an interest under it, he must give full effect to it, as far as he is able. He cannot take what is devised to him, and at the same time, what is devised to another; hence, he must elect which he will take of the two devises.

The rule, that a will is inoperative to pass lands acquired after its execution, will not prevent the application of the doctrine of election.

Void wills, as of *femes covert*, or infants, do not demand an election; so a will not executed according to the statute of frauds, creates no case of election, from implication. Such wills cannot be read as evidence.

The modern English cases do not enlarge the principle of election.

The court will fix a time, in their decree, within which a devisee bound to elect, must make an election; and if the election is *not* to take the estate, in fact used and enjoyed under the will, the court will further decree an account of rents and profits of the part so held and used.

APPEAL from the equity side of *Frederick* County Court.

The appellees in their bill alleged, that *Caspar Mantz*, being seized and possessed of a large real and personal estate, did, on the 29th August 1832, publish his last will and testament; and about the 29th October 1839, died without having revoked, or in any manner altered or changed his said will. That *John H. McElfresh*, named in said will, took upon himself the burden of executing all the trusts imposed upon and confided to him by said will; both as the sole executor of said will, as also the trustee for the several parties, devisees, and legatees, named in said will. That in and by said will and testament, the said testator did, among other things, devise and bequeath to the said John, &c., (for a statement of which devises and bequests, see the will *post.*) That the said *J. H. McE.*, after the death of said testator, gave to your oratrix, *Christina Barr*, wife of *David Barr*, full and immediate possession of said farm, so devised to her as aforesaid, in compliance with the direction of said testator; and she has, ever since, received and enjoyed the rents and profits thereof. He also received and paid over to her, the dividends received by him on said bank stock; also, the rents on the dwelling house of said testator, and the several lots of ground in *Frederick* town;

as devised as aforesaid, for the use of your oratrix. But the said *McElfresh*, in his life time, did not pay over to your oratrix any part of the interest due her on the said sum of $32,000 ; contending, that he was not bound to pay the same until two years after the death of said testator ; that he was entitled to hold the said sum, free of interest, for one year after the death of said testator ; so that your oratrix would be entitled to receive interest on said sum, from the 29th day of October 1840, and not before ; to which your oratrix objected, and the said *McElfresh*, therefore, withheld from her the said interest on said $32,000; that the said *J. H. McE.* died some time in the month of July 1841, intestate, and that letters of administration on his goods and chattels, rights and credits, have been granted by the Orphans court of *Frederick* county, to his widow, *Theresa McElfresh* and *William M. Beall*, who are acting as such administrators ; your orator and oratrix further charge, that the said *J. H. McE.*, in his life time, received and held in his hands, for the use of your oratrix, the interest on said $32,000 ; and that he also received from the assets of said testator the said principal sum of $32,000, and had the same so invested or loaned, as to produce and yield annually, the legal interest of the same ; which ought to have been, but which was not, paid over to your oratrix, during the life time of the said *J. H. McE.;* that some time after the death of said *J. H. McE.*, your oratrix applied to his said administrators to pay her over the dividends on said bank stock, that had accrued in part, and had not been paid over to her in the life time of said intestate, and which had in part accrued since his death ; as also to pay over to her certain rents that had become due on the real property lying in *Frederick* town ; and also the interest, due to her under the will of her said brother, on the said sum of $32,000 ; but they refused payment of any part to her ; saying, that any payment to be made by them, must be made to whoever might be appointed the trustee for your oratrix, in the place and stead of the said *J. H. McE.*, deceased. That your oratrix being much in want of the money, which her brother's bounty had so kindly provided for her, immediately filed her pe-

tition, together with her husband, in this honorable court; and obtained an order appointing *George Schley* her trustee, to act in the place and stead of the said *J. H. McE.*, in regard to said trusts; that said *George Schley* has accepted said trust; that the said *G. S.* as trustee, as aforesaid, in the place and stead of *J. H. McE.*, and by virtue of said order, called on said administrators of said *McElfresh,* to pay into his hands, for the use of your oratrix, according to the provisions and directions of said last will of said *Caspar Mantz,* the $32,000, in cash, with all the interest due thereon; as also the rents of the real estate, and the dividends on the said bank stock, that had been received by the said *J. H. McE.* in his life time; but had not been paid over to your oratrix, the said *Christina,* by him. That the said administrators did pay over to said *George Schley,* as trustee for your oratrix, the rents and dividends on the bank stock received by said *J. H. McE.*, as also the sum of $28,000, in part of the said principal sum of $32,000; and the sum of $2426.66, as interest on said $32,000, from the 29th day of October 1840, being one year after the death of said testator, up to the 3rd day of February 1842 : that being the day on which the payment was made to your orator, the said *George Schley.* But the said administrators refused to pay the remaining $4000, of the said principal sum, to the said *G. S.;* and now hold the same in their hands, and refuse to pay it over for the benefit of your oratrix, until, as they say, your oratrix and her said husband will unite in a deed of conveyance : by which, they will convey and release to the said *T. McE.*, as the residuary devisee in said will, all their estate, right, title, and interest both at law, and in equity, in and to a certain farm or tract of land, known as the "*Kenega farm ;*" and which said land was purchased, by and conveyed to, the said *Caspar Mantz,* some considerable time after he had made and executed his said last will and testament. This conveyance your oratrix is unwilling to make, believing, as she is indeed advised, that the said testator died intestate, as to the said land so purchased by him, after he had made his said will, and that the same will descend to his heirs at law, of whom your oratrix is one; and

that your oratrix is under no obligation, legal or equitable, to forego her rights as one of the heirs at law, of her said brother, to said farm, to enable her to receive and enjoy the whole bounty intended for her, and given to her by his said last will and testament. But now so it is, &c. Prayer, for subpœna against the appellants, and for relief, &c.

*Caspar Mantz* devised as follows :

"1st. I devise and bequeath to *John H. McElfresh,* his heirs or assigns, for the purposes, uses, and trusts, hereinafter mentioned, 222 acres of land, more or less, being part of *"Locust Level,"* &c.; and $10,000, money, now in the hands of *J. H. McE.,* bearing interest, &c. It is my wish and desire, and I do so order and direct, that the nett profits arising from the aforesaid farm of 222 acres, after deducting what is necessary to keep said farm and the buildings thereon in good repair, together with the interest arising after my death from the $10,000, of three per cent funds, in the hands of *J. H. McE.,* and the $5000 in cash as aforesaid, shall be invested in some good funds, at the discretion of the said *J. H. McE.* I further order and direct, that the said *J. H. McE.* shall pay over to my sister *Eleanor,* out of the nett proceeds of the real and personal estate, above devised, during the life of her husband, as much as the said *J. H. McE.* may think necessary for the comfort of my said sister *Eleanor,* and her children ; but in no event to suffer any part of said proceeds to go into her husbands hands. And any receipt or acquittance which my sister *Eleanor,* though covert, shall execute, &c. I further direct, that should my sister *Eleanor* outlive her husband, that the nett proceeds of the land, and money, and cash, hereinbefore mentioned, shall be paid, semi-annually, to my sister *Eleanor,* &c ; and all the nett proceeds and increase of the said real and personal estate, which may be in the hands of the said *J. H. McE.* at the death of my sister *Eleanor,* shall be equally divided between her children, share and share alike ; but should any of her said children have died, before said division shall be made, and left children, the said children shall be entitled to their mother's or father's share, as the case may be. But

no division, as aforesaid, shall be made during the life of my sister *Eleanor's* husband, nor until her youngest child shall attain the age of twenty-one years. If in the course of events, it should become necessary for the said *John H. McElfresh* to make a disposition of his worldly affairs, I hereby authorize and empower him to appoint some trusty friend to carry into effect my wishes and directions, respecting the devises and legacies hereinbefore mentioned, and to allow him such compensation as he may think proper.

2nd. I hereby devise and bequeath to *J. H. McE.*, his heirs or assigns, for the purposes, uses and trusts hereinafter mentioned, $454\frac{1}{4}$ acres of land, more or less, &c. It is my will and desire, and I do so order and direct, that immediately after my decease, my sister *Christina* shall go into the possession of the aforesaid farm of $454\frac{1}{4}$ acres, have and enjoy the whole productions and profits thereof. It is my will and desire, and I do so order and direct, that all the other property hereinbefore mentioned, save what is put in trust for my sister *Eleanor*, shall be in the hands of the said *John H. McElfresh*, in trust; the said *John H. McElfresh* is to receive and collect all the nett proceeds of said real and personal estate; and the same, together with all the interest on bank stock and other funds, he shall pay over to my sister *Christina*, to her own separate use, during her natural life, whether she be covert or sole; and any receipt or acquittance of my said sister *Christina*, though covert, given to the said *John H. McElfresh*, touching the trusts hereinbefore mentioned, shall be as valid in law as if she was sole. And further, it is my will, and I do so order and direct, that after the death of my said sister *Christina*, all the real estate hereby devised to the said *John H. McElfresh* in trust, for my sister *Christina*, shall be sold ; and I do hereby authorize and empower the said *John H. McElfresh* to convey the same as fully as I could do, and the proceeds arising from said real estate, together with the bank stocks and other funds, and the increase thereof, herein devised in trust, for the benefit of my sister *Christina*, shall be equally divided among the children of my sister *Christina*, that may be then living, share

and share alike ; and should any one, or more, of her said chil dren have died before said division, then the child or children, of such child or children, shall come in for the same share that the mother or father would have been entitled to, if living. Provided, and it is my will and desire, that no sale or division of the real and personal property, herein devised and bequeathed to *John H. McElfresh*, in trust, for my sister *Christina* and her children, shall be made, until her youngest child arrive to the age of twenty-one years.

3rd. I devise and bequeath to my sister *Theresa*, to her, her heirs and assigns, forever, all the following property, to wit: all that tract of land, being part of a tract of land called "*Tasker's Chance*," &c., to her my said sister *Theresa*, her heirs and assigns forever.

4th. It is my will and desire, and I do so order and direct, that my sister *Theresa* shall pay to *Catharine Clark*, a free coloured woman, $100 in quarterly payments of $25 each, in advance, during her natural life. There is a chest of home made linen in my house, if there should be any of it left at the time of my death, it is my wish that it shall be equally divided between my three sisters, *Eleanor, Christina*, and *Theresa*. And furthermore, I do hereby make and constitute my said sister *Theresa*, my residuary legatee and devisee ; and do hereby give and bequeath to her all my money, choses in action, and all the rest, residue and remainder, of my property, real, personal, and mixed, (not hereinbefore devised or bequeathed,) of which I am now possessed, or of which I may be possessed at the time of my death, to her, my said sister *Theresa*, her heirs and assigns forever. And finally, I do hereby make, constitute, and appoint *John H. McElfresh*, my whole and sole executor of this, my last will and testament ; and I do revoke and annul all former wills heretofore made by me, relying on his honesty and integrity to carry this, my last will and testament, into full and complete effect. In testimony whereof, I have set my hand and affixed my seal, this 29th August 1832. Caspar Mantz, (Seal.)

The defendants, *William M. Beall* and *Theresa McElfresh,* in their answer declare, that they admit that *Caspar Mantz* did, on the 29th day of August 1832, make and execute his last will and testament in due form of law, a true copy of which is exhibited as a part of the complainants bill, and that the said *C. M.* died in the latter part of October 1839, without having revoked said will. That *John H. McElfresh,* who was named in said will as executor and trustee, to take charge of the estate of said *Caspar Mantz,* accepted the trust reposed in him, and as to the true character and legal and equitable construction of the trust reposed in the said *John H. McElfresh,* these defendants submit themselves to the determination of this honorable court. That the said *Caspar Mantz,* after the making and executing said last will, purchased a tract of land of a certain *Joseph Kenega,* and obtained, therefor, a deed of conveyance, a true and certified copy thereof is here exhibited as a part of this answer; and that the said *Caspar Mantz,* died, the owner of said land and premises, contained and specified in said deed from *Joseph Kenega.* And these defendants state further, for answer, that the said *Christina Barr,* one of the devisees and legatees aforesaid, and her trustee *George Schley, esq.,* claim to receive the whole of the devises and legacies given to the said *Christina Barr,* by the said *C. M.;* and the said *Christina Barr,* as one of the heirs at law of *C. M.,* also claims one-third of the said land and premises, so, as aforesaid, conveyed to the said *C. M.,* after the making and executing said will; without relinquishing or giving up any part of the testators bounty, given by said will to the said *Theresa McElfresh,* the residuary devisee and legatee. These defendants are advised, that the said *Christina Barr* will not be permitted, according to the rules of a court of equity, to take both under and against the will of *Caspar Mantz;* but that she will be bound, according to the well settled rules in a court of equity, to elect which she will take. These defendants further state, for answer, that they are advised that they are not bound in equity, to pay any more of the legacies bequeathed to the said *Christina Barr* to *George Schley esq.,* her trustee, until the

said *Christina* make her election, to take under the will and release all right she may have, if she have any, to the said land and premises commonly called the "*Kenega farm;*" and they also state, that the said *Christina Barr* claims both, the bounty of the testator under the will, and a proportion of the after acquired land and premises commonly called the "*Kenega farm;*" which they refuse to yield, until the question of election is finally determined by this honorable court, as a court of equity. These defendants further state, for answer, that they admit that the said *John H. McElfresh* is dead, and that he died intestate, and that these defendants obtained letters of administration from the Orphans court of *Frederick* county, on the estate of the said *John H. McElfresh,* deceased.

The residue of this answer not being deemed material to illustrate this case, as decided, is omitted by the reporter.

After the general replication, the parties filed an agreement showing what had been done under the trusts of *C. M's* will; and that a *pro forma* decree be passed by the court for the purpose of taking the case to the Court of Appeals, to determine and settle the questions submitted to the court upon the following propositions, viz :

In this case, if the court shall be of opinion that *George Schley, esq.,* as the trustee of *C. B.,* is, according to the doctrine of a court of equity, entitled to take and receive under and by virtue of the will of *C. M.,* the whole and entire property and money devised and bequeathed to *J. H. McE.,* in trust, for the said *Christina Barr,* and she to take and hold her proportion as one of the heirs at law of *C. M.,* deceased, of the land and premises specified in the deed from *Joseph Kenega* to the said *Caspar Mantz,* and that the said *Christina Barr* and her said trustee can, according to the rules and principles of a court of equity in this State, receive and claim under the circumstances of this case, all the property devised and bequeathed in trust for her, and also as heir at law of *C. M.,* deceased, one-third part of the said land and premises aforesaid, purchased of *Joseph Kenega* by the said *C. M.,* after the making and executing his will, without being put to elect, which she will take ;

then, and in that case, the court will pass an unconditional decree, ordering and directing the said *Wm. M. Beall* and *Theresa McElfresh* as the administrators of *J. H. McE.*, deceased, to pay to the said *G. S.* as the trustee of *C. B.*, the sum of $4000, with the interest thereon, from the 3rd day of February 1842, as the balance of the trust funds which were in the hands of *J. H. McE.*, as trustee for said *Christina Barr*, at the time of his death.

But, on the contrary, if the court shall be of opinion, under all the circumstances of this case, that the said *C. B.* cannot, by the said trustee, according to the principles of a court of equity, take, and rightfully claim, all the property and money devised and bequeathed to her by the said *C. M.*, and also, as heir at law of *C. M.*, a proportion of the land and premises specified in the said deed from *Joseph Kenega;* and that this case is one in which the said *C. B.* ought to be put to her election, whether she will take the property bequeathed and devised in trust for her, by the said *C. M.*, in and by his last will; or whether she will take, as one of the heirs at law of said *C. M.*, deceased, her proportion of the land and premises purchased by the said *C. M.* after the making and executing said will of the said *Joseph Kenega*, and that she cannot have and claim both. Then, and in that case, the court will make such a decree in the premises, as shall to the court seem just and equitable, and in accordance with the doctrine of election; and to have the same effect as if a cross bill in this case had been filed, to compel the said *Christina Barr* and her trustee to make their election, how they will take, &c.

On the 4th day of October 1843, *Frederick* county court, as a court of equity, (MARSHALL, A. J.) decreed, that *William M. Beall*, and *Theresa McElfresh*, as the administrators of *J. H. McE.*, deceased, pay to *George Schley*, as the trustee of *C. B.*, or bring into this court, to be paid to him, the sum of $4000, and the interest thereon, from the 3rd day of February 1842. And it is further ordered, adjudged, and decreed, that the said *Christina Barr* is entitled to claim and hold, by her said trustee, all the property devised and bequeathed in

trust for her by *Caspar Mantz*, in his last will and testament. And also, she is entitled to hold and claim as one of the heirs at law of the said *Caspar Mantz*, deceased, her undivided third part of the land and premises, purchased by the said *Caspar Mantz*, after the making and executing his last will and testament of a certain *Joseph Kenega*, specified and described in the deed of said land, exhibited in this case by the defendants, as a part of their answers.

The defendants appealed to this court.

The cause was argued before ARCHER, CHAMBERS, SPENCE, STONE and SEMMES, J.

By PALMER for the appellants.

In a court of equity, can one take under a will, and against it? Can he so defeat the intent of the testator? Real property, acquired after the execution of a will, vests in the heirs of law of the testator. Personal property, in the executor. We admit, that after acquired, real property, does not pass under a general devise, in a will. The language of the *Stat. Hen.* 8, has secured that construction. Yet the law of *England* adopts the rule, that one cannot take under, and repudiate the same will. Then, does the equitable doctrine of election apply here? Does it apply at all? Does it apply to an heir at law? *Dillon vs. Parker*, 1 *Swanst. C. R.* 359. 2 *Stor. Eq.* 335, 393, 395.

An election is between two independent alternatives. 2 *Stor. Eq.* 355. Infants and *femes covert* may be compelled to elect. *Snelgrove vs. Snelgrove*, 4 *Dessaus*, 294, 300. *Upshaw vs. Upshaw*, 2 *Hen. and Mumf.* 381.

Exceptions to the rule of election: wills of infants; wills not executed according to the statute of frauds. *Dillon vs. Parker*, 1 *Swanst.* 405, *note*. *Hearle vs. Greenbank*, 1 *Ves. Sen.* 306, 307. *Sheddon vs. Goodrich*, 8 *Ves. Jr.* 496. 1 *Cox, note* 241.

The exceptions relate to inoperative or void wills. The intention of the testator is not matter of proof. 1 *Dev.* 635.

On the rule and its application, he cited *Lady Cavan vs. Pulteney*, 2 *Ves. Jr.* 560.   *Wilson vs. Lord John Townshend, Ib.* 696, 697.  *Ward vs. Baugh,* 4 *Ves. Jr.* 623.  1 *Pow. Dev.* 255, 436.   *Hixon vs. Oliver,* 13 *Ves.* 111.   *Welby vs Welby,* 2 *Ves. & Beam.* 199.  4 *Kent. Com.* 510.  3 *Doug.* 361. *Churchman vs. Ireland,* 1 *Russ. & Mylne,* 250.  2 *Sto. Eq.* 356.  6 *Cruise Dig.* 17, 21.   *Tit. Devi.* 20, 26.   *Bunker vs. Cooke,* 1 *Bro. Parl. Cases,* 199.   *Churchman vs. Ireland,* 6 *Con. Eng. Chan. Rep.* 237.  *Ib.* 4 *Simons,* 520. *Thelusson vs. Woodford,* 13 *Ves.* 111, is the very case at bar.

WILLIAM SCHLEY for the appellee.

The intention of the testator must govern ; arguments and opinions to show that intent, result from the will itself.   4 *Kent,* 410.

A will resembles a conveyance.   It cannot pass after acquired lands.   Not having title, the testator cannot pass them.   *Shep. Touch.* 438.   *Kemp vs. McPherson,* 7 *Har. & John.* 335.

The complainants concede, that the land in controversy descended to the heir at law.   The three sisters are entitled as heirs at law.   The term residue, refers to time of making the will.   *Brailsford vs. Heyward,* 2 *Dessau,* 33.   *Van Kleeck vs. The Reformed Dutch Church,* 6 *Paige, C. R.* 600, and relates to what is not previously disposed of, as to real property ; as to personal estate, it relates to the death of the testator.   *Oke vs. Heath,* 1. *Ves Sen.* 141.   *Cambridge vs. Rous,* 8 *Ves. Jr.* 25.   *Thelusson's* will did not affect a residue.

Where property is given to A, and also to B, and B takes not only what is granted to him, but also that which is granted to A, and against the intent of the grant which creates both estates ; on the doctrines of compensation, an election between the two parcels is enforced, and B not permitted to take both : for one cannot claim under any instrument, without giving full effect to it.   2 *Rop. Leg.* 378, 386, 389.

Election arises upon grants of property by mistake, but a *residuum* relates to real property devised, retained until the

testator's death. 1 *Pow. Dev.* 264, *note* 7. *Smith, et. al., vs. Edrington,* 8 *Cranch,* 68, 97.

It does not relate to *future* acquisitions. *Johnson vs. Telford,* 4 *Con. Ch. Rep.* 409.

The fact is stated in all the cases, that the testator had undertaken to deal with that, which did not belong to him. To raise a case of election, an intent to give that which is not the grantor's own property, must exist. *Churchman vs. Ireland,* 6 *Eng. Chan. Rep.* 237, is stronger than the case at bar. *Ib.* 4 *Con. Eng. Chan. Rep.* 409, 412. 1 *Russ. & Mylne,* 244. *Welby vs. Welby,* 2 *Ves. & Bea.* 187, an heir was put to his election, between lands devised, and lands by descent. The *English* cases are all fully examined. In the *City of Philadelphia vs. Davis,* 1 *Wharton,* 490. *Girard, et al., vs. City of Philadelphia,* 4 *Rawle.* 323. Cases of doubt do not constitute cases of election.

The fact that two have differed about the construction of a will, show it not to be a case of election. *Broome vs Monck.* 19 *Ves.* 609. *Gilb. Eq. Cases,* 15.

There is an implied condition in all cases of election, that devisee will not, and ought not, to claim both estates. The case of *Thelusson and Woodford,* does not affect this cause, which is within *Back and Kett, Jacob,* 534, and decided by it.

Then who is to exercise the right of election here? The *feme covert?* or her trustee for her? or the heirs at law? 2 *Rop. on Leg.* 430.

The heirs at law are entitled to all undisposed of estates. *Sir Thomas Jones,* 112, 114. 8 *Modern,* 90.

All the decided cases are before the court. The doctrine of election is founded on clear, and unquestioned law. To devises on express condition, it will of course apply. So of implied conditions: benefits to A and B; the grant to B, being of A's property; an implied condition not to take both. So where one has power over two estates, grants one to A, and makes an ineffectual attempt as to B. There A must elect upon principles of equity. It would be against conscience not

25 v.2

to carry out devise to both. Such is the case of *Thelusson vs. Woodford.* But this case is clear of all previously decided causes. *Mrs. Barr* has nothing but the rents and profits ; no part of the *corpus* of her estate ; after her death the estate goes to her children.

*P. J. T.* had the whole legal estate, and claimed another estate, which *disappointed the will :* claiming one estate under the will, he could not claim the other estate in opposition to it. If he claim the other estate, he could not claim under the will. Here the trustee of the fund claims : it is not *Mrs. Barr* ; she does not take under the will. We do not set up legal rights in opposition to equity : *Mrs. B.* has no power to burthen the estate, sell, or dispose of it ; the trust fund cannot be a question in any way ; the right of election must arrest the determination of her estate ; the thing devised, must be capable of alienation.

ReVERDY JOHNSON in reply.

*Mrs. Barr* must be entitled to one third of the estate, at common law. There is one question, peculiar to the case itself, *i. e.,* what is the true interpretation of the will, which shuts out the heir at law? Looking to the whole character of this devise, at the time the will was executed, it is clear, the testator did *not* design to die intestate, of either his real or personal estate. If intestate, as to the farm in controversy, it must be attributable to ignorance, in fact, of the effect of the devise. As far as relates to *Mrs. Barr* and *Mrs. Harding,* the testator did not intend to vest in them, absolutely, any interest in his estate, so as to subject it to their husbands power. We are not left to speculate about this. The testator knew how to devise absolute, and qualified estates, so as to keep them clear of their husbands. The whole will designed *testacy,* and, to avoid *intestacy.* That is manifest in fact ; or, why did he put the words in the last clause ? *All he then had,* must pass. These words were put to enlarge antecedent phrases ; to include, what they might not embrace. They are not surplussage ; they have an independent meaning : and

they meant, that all the estate he possessed, at the time of his death, should go to the residuary legatee.

As to personal and mixed estate, the will operates upon all; and the words used, put the real estate on same footing; show the *same* state of mind as to *both*. The meaning is, all I have now, or may have, at my death. He meant, that *Mrs. McElfresh* should take under the will, and not as heir. All who take under the will, must admit this. As respects the devisees, the intent was, that *all of them* should take under the will. *Dillon vs. Parker*, 1 *Swanst.* 397, *note*, 2 *Story Eq.* 339.

The doctrine of election, is more ancient than the case in *Vernon*. It may be traced back to *Elizabeth*. It arises, most frequently, under wills; yet is applicable to deeds. Its justice is recognized every where. A devisee is estopped to deny the testator's power to devise. He, who claims any part, must admit the residue. The right, under grants, rests on the same footing. It is like lessor and lessee; the latter cannot deny title to make the lease.

As to the two devises, to *Mrs. Barr* and *Mrs. Harding*, being in trust for life, remainder to the children? *Mrs. Barr* has made her acceptance of the life interest, and she now disputes as to the *Kenega farm*. The children have nothing to do with this controversy. The limited character of the interest cannot change the principle. As she takes the trust estate, she is estopped from relying on her rights as heir at law.

A will, not executed in conformity with the statute of frauds, is still good as to personalty. There, the terms of the legacy must be complied with. *Welby vs. Welby*, 2 *Ves. & Bea.* 190.

The rule, for which we contend, has never been questioned, from *Elizabeth* to the present time, and is equally applicable to an heir at law, as to other parties. *Thelusson's* case has never been doubted. Its demonstrative reasoning is conclusive.

2 *Vernon*, 581, (1706,) announces the general rule. It related to devises of fee simple, and fee tail estates, among children. Upon an implied condition, acquittances were decreed, *inter se*. *Forrester* 176. *Ambler* 338. *Wilson vs. Lord John Townshend*, 2 *Ves. Jr.*, 196. *Birgmingham vs. Kirwan*, 2 *Scho. & Lef.* 449. 2 *Sto. Eq.* 338, *note.*

A will, devising to an heir at law the same estate which would descend to him, does not operate at all; but if, in the same will, the testator devises an estate to another, then the part devised to the heir, operates, upon condition that he gives efficacy to the will. *Freke vs. Lord Barrington*, 3 *Bro. C. R.* 285, *note. Newman vs. Newman*, 1 *Bro. C. R.* 186. *Wollen vs. Tanner*, 5 *Ves. Jr.*, 218. *Blount vs. Bestland*, 5 *Ves. Jr.*, 515. *Pettiward vs. Prescott*, 7 *Ves. Jr.*, 541. *Broome vs. Monck*, 10 *Ves. Jr.*, 609, 616.

The rule is stated as a rule of law, applicable to all persons, and all classes of persons.

The case *Thelusson vs. Woodford*, 13 *Ves.* 209, embraces the contest at bar.

To accept the benefit, while he declines the burthen imposed, is a fraud on the design of the donor.

*Crosbie vs. Murray*, 1 *Ves. Jr.*, 557, 559. All the provisions of the will ought to be conformed to. This principle covers every variety of case, to which its justice is applicable. The cause of failure is immaterial. Courts look to the will, for the purposes of the devisor to do justice between co-legatees.

*The rule can only apply to a defective will :* a grant of *no* title. The true owner of the benefit must elect, to give up his own as the law awards it, or the benefit devised, as the testator granted it. It is enough, here, if the testator intended to pass *Kenega farm*, though it was after acquired land.

The doctrine of election, is a rule of law, established for the sole design of promoting justice ; of disposing, equitably, of all the devises in a will ; is irrespective of parties ; and must apply, with most force, to the testator's own property. If the rule is applied where the property of a stranger is given, it must apply most strongly to the testator's own estate.

From 1806 to this time, except *Sir Thomas Plummer*, all judges have concurred in *Thelusson vs. Woodford;* and indeed it is too clear for doubt. *Mr. Justice Kennedy*, in *Pennsylvania*, mainly relies, that since the revolution, no cases of *English origin* are to be referred to in the courts of that State. In that State they are wiser than all the world put together !

The rule is maintained in 4 *Con. Ch. Rep.* 209. 4 *Con. C. Rep.* 412. *Kinnard vs. Williams,* 8 *Leigh. Va. Rep.* 400.

Whatever force there may be in 4 *Whart.* 505, 506, as applicable to certain devisees, it has none, as respects a contest between a specific and a residuary devisee, who was to have after acquired property. In the latter case, the specific devisees can only take to the extent of their devises. If one of them is heir at law, and another residuary devisee, then the heir at law is to get no more than the property specifically devised to him. If all, alike, are heirs, specific legatees and residuary, then each should enjoy according to the intent of the will.

Upon the question, whether the court or party in interest should make the election, in cases of coverture and infancy? *Boughton vs. Boughton,* 2 *Ves. Sen.,* 12. 2 *Rop. Leg.,* 426, 430, 433. *Ward vs. Bawgh.,* 4 *Ves. Jr.,* 623. *Long vs. Long,* 5 *Ves. J.,* 445.

The words of this will are very clear, and carefully put, to prevent dying intestate, as to this property.

ARCHER, J., delivered the opinion of this court.

The controversy in the present case, arises under the will of *Caspar Mantz;* and grows out of the following clause in the will:

"And furthermore, I do hereby make and constitute my sister *Theresa,* my *residuary legatee* and *devisee;* and I do hereby give and bequeath to her all my money, choses in action, and all the rest, and residue, and remainder of my property, real, personal, and mixed, (not hitherto devised or bequeathed,) of which *I am now possessed, or of which I may be possessed, at the time of my death;* to her, my said sister *Theresa,* her heirs and assigns forever."

Which said will was executed on the 9th day of August 1832.

On the 18th March 1835, he purchased of a certain *Joseph Kenega,* a valuable farm, near *Frederick* town, for which he duly obtained a conveyance; and died on the 29th October 1839.

It appears by the facts in the case, that the testator left three sisters, *Mrs. Harding*, *Mrs. Barr*, and *Mrs. McElfresh*; and that *Mrs. McElfresh* is his residuary legatee and devisee.

Among other things, the testator devised to *John McElfresh*, in fee, the husband of the residuary legatee and devisee, certain real estate; and fifteen thousand dollars in cash, in trust, for the use of *Mrs. Harding*, for life, and after her death, the whole. of the said property to go to *Mrs Harding's* children; as in the will is particularly specified.

A devise of certain real estate, and thirty-two thousand dollars, besides bank, and turnpike stocks, particularly specified in the will, was made to the same trustee for the benefit of *Mrs. Barr*, for life, and after her death, for the benefit of her children; as set forth particularly in the will.

He also devised sundry lands to *Mrs. McElfresh*, her heirs, and assigns; and in the conclusion of his will, constituted her residuary legatee and devisee, in the terms which have been before set forth.

The question submitted to us under the will, above adverted to, as appears by the agreement, and statement in the record, is, whether *Mrs. Barr*, by her trustee, can claim the property devised in trust to her by the will of *Caspar Mantz*; and also, as heir at law, the one-third of the value of the *Kenega* farm, purchased by *Caspar Mantz* after the execution of his will?

The will not having been republished, it is conceded, that the after purchased lands never passed under it; no matter how clear may be the intention of the testator, in the clause under consideration, to pass them.

The answer to the question will be found in the solution of the enquiry, whether the case is one for election, according to the principles of law applicable to such doctrine? The inapplicability of the doctrine of equitable election, to this case, has been urged upon several grounds:

1st. On the intention of the testator, as deduced from the residuary clause.

2nd. Its inapplicability to an heir at law.

3rd. Its supposed inapplicability to a clause in a will, which, although it may manifest the intention of the testator, is in itself inoperative to pass any estate by the rules of law. And,

4th. On the ground that the case before us, if the intention were even clear, and if applicable to an heir at law, is not of such a character as comes within the most approved definition of the doctrine.

1. No person will be compelled to make an election, unless the intention of the testator be sufficiently made out. There never can be a case of implied election, but upon a presumed intention of the testator. 3 *Bro. Ch.* 191, 1 *Ves. jr.* 257, 557. The degree of intention necessary to raising a case of election, must plainly appear upon the face of the will. On the other hand, it is said, the court is not to refuse attention, to what amounts to a moral certainty of the testator's intention; where that is to be gathered, either from the state of the property, or the purview of the will. 4 *Bro. Ch.* 24.

What was then the intention of the testator in the residuary clause? It is supposed that the residuary clause may be construed, so as only to shew an intent to pass, that which should constitute a residue of his then existing property, at the time of his death; and not property, which, after the execution of his will, he might acquire. Such a construction would make the testator guilty of the folly of supposing, that without such clause, either the residue at his death would not pass, by the term, "of which I am now possessed," or, that any portion of his property, constituting a part of the residuary, if disposed of by him in his life time, would pass under the will: a supposition we should not be justified in making, when the words, themselves, have so plain an import. His design is declared in express terms, to make her his residuary devisee; and of what, he explicitly announces, by devising the remainder of the property, of which he was then possessed, or of which he might be possessed at the time of his death; the term "*which,*" referring in the mind of the testator to the word "*property,*" and not to the word "*remainder.*" It then stands as a devise of all the estate of which he died possessed, or of which he might be possessed at the time of his death.

We agree with the Vice Chancellor, in 4 *Sim.*, 520, that such words show in a most marked manner, that he intended to pass, not only the estates he had at the date of the will, but all that he should be in possession of, at the time of his decease. It cannot be denied, that the words would pass all the personal estate, that the testator was possessed of at his death; and if it is clear as to future personal estate, how can it be said he had not the same intention as to real estate, when they are both disposed of in the same sentence? Can any one say, that he had one intention as to personal estate, and a different intention as to the real estate, when he uses "the same words as to both." And he overrules a contrary construction put upon words of the like import, in *Back & Kett, Jacobs Rep.*, 540.

2. That this doctrine is applicable to an heir at law, is clear from the authorities. 2 *Vern.* 586. 2 *Ves. Jr.* 696. 2 *Scho. & Lef.* 449. 2 *Story Eq. note*, 338. 2 *Ves. Jr.* 544, 559. 2 *Ves. & Bea.* 187, are all cases where the heir at law was put to his election; and in 10 *Ves.* 593., the point was admitted, that the doctrine reached the heir. The same doctrine was applied in 2 *Eq. Ca.* 2, referred to in 2 *Rop. Leg.* 405; and in the case of 2 *Ves. & Bea.* 187, it was applied in a case, in which the devise to the heir was inoperative.

In the case of an *express condition*, there never could have been a doubt, because the testator may annex what condition he pleases to his estate. Why should not election occur in the case of an implied condition, if the intention be plain and clear, as against the heir? It is said, that the devise to the heir is read as if it were to him absolutely, if he confirm the will; if not, then in trust for the disappointed devisees as to so much of the estate given to him, as shall be equal in value to the estates intended for them. It is only carrying out a plain intent of the testator, and giving to the residuary devisee, that which the testator intended, and forbidding the heir from taking property not designed for him. From the earliest case on the subject, the rule is, that a man shall not take a

benefit under a will, and at the same time defeat the provisions of the instrument. If he claims an interest under an instrument, he must give full effect to it, as far as he is able to do so. He cannot take what is devised to him, and, at the same time, what is devised to another; although, but for the will, it would be his: hence he is driven to his election to say, which he will take.

3. But we have seen that the will is inoperative to pass the lands acquired after its execution. Will this fact prevent the application of the doctrine of election? The *English* cases since the revolution, are, we think, decisive of this subject. 13 *Ves.* 219. 4 *Simons*, 520. 4 *Con. Ch. Rep.* 412. The first of these cases was affirmed in the *House of Lords*, and is considered, notwithstanding the opinion of *Sir T. Plumer, in Back & Kett, Jacobs* 534, as a case of great authority; and is now the settled law of *England.* We could add nothing to the convincing reasons by which these cases are supported, by the judges who decided them. There are cases of void wills, such as the will by a *feme covert,* or an infant, which certainly, by established cases, will not demand an election; but these have been rightly placed on a ground, which does not affect the present question. So too, a will not executed and attested according to the statute, creates no case of election from implication. They are considered as no wills; they cannot be read as evidence; and there is nothing, therefore, to indicate intention. But in the case before us, the will is properly in evidence; and the intention is clearly indicated. The cases above referred to may be the first in which the law of election was applied to a will, ineffective to pass after acquired lands; but no case from the *English* books has been cited against such application, and we consider them as the strongest evidence of the pre-existing law? We have examined an opposing case, cited from 1 *Whar. Pen. Rep.* 509, but cannot agree with it, in confining the rule of election to the operative parts of the will, from the fear of being led into error, by endeavoring to give effect to an intention imputed to the donor. It would be only in such cases where the inten-

26        2v.

tion was plain, that the rule would or ought to be extended, and when this is clearly ascertained, it would be unbecoming a court of conscience to allow the heir to take the devise to himself, and also as heir, what was manifestly intended for another.

4. The modern *English* cases do not, we apprehend, extend or enlarge the principle of election. That principle, as applicable to this case, we take to be this : that no one shall be permitted to take under an instrument, and defeat its provisions ; or, in the language of *Lord Erskine*, a person shall not claim an interest under an instrument, without giving full effect to that instrument as far as he can. This is not a new doctrine ; it will be found to have been announced as long since as the case of *Noys & Mordaunt*, 2 *Ves.* 581. *Lord Redesdale*, in 2 *Scho. & Lef.* 449, 451, says the general rule is, that a person cannot accept and reject the same instrument ; and he declares it to be the foundation of the law of election, upon which courts of equity, particularly, have grounded a variety of decisions in cases, both of deeds and wills.

The complainants allege in their bill, that after the death of the testator, *Mrs. Barr* was put in possession of the lands devised ; that she had ever since been in the enjoyment of the rents and profits ; and had received the interest on the bank stock devised to her ; and that her trustee had received in pursuance of the will, the sum of $32,000 for her use, and had invested the same ; that she had made efforts to procure the payment of the interest from the said trustee, on the money bequeathed to her.

It thus appears, that her trustee and herself, are in possession of all the estate devised to her ; and she is claiming, as heir at law, the proceeds of the *Kenega* farm, purchased by the testator after the date of the will. By the agreement of the parties, it is conceded, that the court may make a decree in accordance with the doctrine of election, and to have the same effect as if a cross bill had been filed, to compel *Mrs. Barr* and her trustee to make their election ; provided, the court should be of opinion, that *Mrs. Barr* could not claim the devises and be-

McElfresh, adm'r, *vs.* Schley and Barr.—1844.

quests made in her behalf; and also claim, as heir at law, her proportion of the lands purchased after the execution of the will; and that this is a case in which *Mrs. Barr* should be compelled to make her election.

We have seen, that the case before us is a proper case for election; and we perceive nothing in the character of the trusts, which should forbid its application; or how any injustice could be done to the children of *Mrs. Barr*, who take, after her death, by the terms of the trust. If *Mrs. Barr* elected to take the property devised, then all her right and title in the property purchased after the date of the will, would be directed to be conveyed to the residuary devisee. If, on the other hand, she elected to take as heir the after purchased land, her life estate in the lands devised and in the property bequeathed, would be gone, and would pass to the residuary devisee; such an election, however, would not affect the persons in remainder, who would take their estates in the property devised; just as they would have taken them, if there had been no case of election under the will.

We shall, therefore, sign a decree, that *Mrs. Barr* and her trustee shall, within sixty days after service of a copy of the decree, make her election; either to take under the will, or to take her proportion of the *Kenega* farm, purchased by the testator after the date of the will; and if she should fail to make her election within that time, that then she shall convey her part of the said *Kenega* farm, which descended to her on the death of the testator, to *Theresa McElfresh*, in fee simple; and the decree shall provide, in case *Mrs. Barr* should elect to take the land descended to her, instead of the devises and bequests to her by the will, that then she shall account for the sums by her received under the will; and that, thereafter, the said trustee shall hold the property devised and bequeathed in trust for *Mrs. Barr*, in trust during the life of *Mrs. Barr* for *Mrs. Theresa McElfresh*. And that the principles of this decree may be carried into effect, the decree of *Frederick* county court will be reversed, and the cause will be remanded to *Frederick* county court.

DECREE REVERSED AND CAUSE REMANDED.