(Decided June 20th, 1861.)

# Ann Tongue's lessee *vs.* Geo. W. Nutwell.

In ejectment by one tenant in common, the defendant, after entering into the general consent rule, cannot deny the ouster; if he intended to deny the ouster he should have applied upon affidavit, for a special rule to confess lease, entry, and not ouster.

Where a defendant in ejectment does not take defence on warrant, he concedes the general identity of the premises in controversy, and cannot deny, under his general issue, the location of the plaintiff's pretensions as set out in the declaration.

Where a devise of land *is void by operation of law,* an heir at law is not estopped from claiming his interest in the land so devised, by the fact that he took other devises and bequests under the will; the doctrine of *election* does not apply to such a case, for by taking such other devises and bequests, the heir manifests no intention to defeat any provision of the will, nor to make an election.

Where the same means and opportunity of tracing title are equally open to both parties, and a will, upon the construction of which the title to the land depended is on the record, the doctrine of *caveat emptor* applies to the purchaser.

Where a party purchases land, the title to which depends upon the construction of a will on record, and, therefore, within reach of any one interested in the inspection of it, he cannot insist that the adverse party who acted in *total ignorance* of his rights, is estopped from claiming the land.

Where one stands by and sees another laying out money and making large investments upon property, to which he has some claim or title, and does not give notice of it, he cannot afterwards, in equity and good conscience, set up such claim.

But this principle only applies against one who claims under some trust, lien, or other right not equally open and apparent to the parties, and in favor of one who would be deceived or misled by such want of notice.

When the act of one is an encroachment on the soil or rights of another, an acknowledged *tort,* equally well known or equally open to the notice of both parties, it gives no right until it has continued for twenty years.

APPEAL from the Circuit Court for Anne Arundel county.

*Ejectment*, brought on the 2nd of April 1855, by the appellant against the appellee, for part of a tract of land called "Holly Hill Farm," containing one hundred and thirty-five and one half acres. The present trial was had under the *procedendo* issued upon the reversal of the judgment upon a former appeal, by the present appellant, which is reported in 13 *Md. Rep.*, 415. The pleadings are fully stated in the opinion of this court. On the present trial the lessor of the plaintiff claimed title as heir at law of Benjamin Harrison, deceased, and the defendant under the heirs at law of John Harrison, a deceased son of said Benjamin. The will of said Benjamin Harrison, executed on the 1st of September 1825, and admitted to probate on the 10th of November of the same year, was construed by this court on the former appeal, and parts of it will be found stated in 13 *Md. Rep.*, 421. In addition to the devises and bequests there mentioned, the testator bequeathed to his daughter, Ann Tongue, one half of his household furniture and three negro slaves. At the present trial two exceptions were taken by the plaintiff.

*1st Exception.* The plaintiff proved that Benjamin Harrison was in possession of Holly Hill, his dwelling plantation, at the time of his death in 1825; that after his death Mrs. Stevenson entered into possession of that part of it now held by the defendant, and held the same till her death in May 1839, and that she died without children, having survived her husband, and that the lessor of the plaintiff, the other daughter of Benjamin Harrison, entered into possession of the *remainder of Holly Hill,* and so continued until 1853, when she sold and conveyed it to Wm. H. Hall, who now holds it. The plaintiff then further offered evidence by John F. Wilson, tending to show the identity of the land in the defendant's possession with that described in the nar., but the witness was unable to describe the courses or distances, or precise course, or the precise length of any one of said lines. On cross-examination he testified that in 1825 or 1826, at the instance of the said John Harrison, he laid off a part of "Holly Hill," for Mrs. Stevenson, agreeably to the

directions of the will of said Benjamin Harrison; that Thomas Tongue, the husband of the lessor of the plaintiff, was present, and it is because of his information then acquired, that he is able at this time to speak of the abuttals, and general direction and length of the lines of said parcel of land, but he is unable to say what quantity of land was so laid off by him, whether it or that described in the declaration was, or is, 130, or 135, or 147 acres.

The defendant then read in evidence a copy of the will of said Benjamin Harrison, and proved that he left three children, who were his heirs at law, viz: John Harrison, Ann Tongue, (the plaintiff's lessor,) and Mrs. Eleanor Stevenson, and that said John Harrison died some time in 1832, leaving several chidren. The defendant then offered to prove that the plaintiff's lessor, with full knowledge of her rights, and title, knew of, and assented to, and acquiesced in the sale of the land in controversy, in 1839, at public sale, for its full value, to Charles C. Stewart, under whom the defendant claims title, and never asserted any claim or title to the same from that time to the bringing of this suit, but on the contrary knew of the fact, that the said Stewart and those claiming under him, including the defendant, erected buildings and made other valuable improvements upon said land, and that the said Stewart, immediately after said sale and purchase, entered into possession of said land, and he, and those claiming under him, including the defendant, by valid legal conveyances, have ever since been in possession of the same, cultivating and using it as their own, and making improvements upon the same as above stated. To which offer the plaintiff objected, but the court (Brewer, J.) permitted the said testimony to go to the jury, provided the defendant further proved that the said plaintiff's lessor knew, at the time of the acquiescence, &c., that she was, upon a true construction of said will, entitled to that interest in the land now claimed in this action. To this ruling of the court the plaintiff and defendant both excepted. And thereupon the defendant, under the aforesaid ruling of the court, but not waiving his aforesaid exception to said ruling, offered evidence to

the jury that the said lessor of the plaintiff, at the time of said sale as aforesaid, knew that she was entitled to an undivided interest in the land in controversy, and with such knowledge did assent to and acquiesce in the sale as aforesaid. To which said ruling of the court, as first herein mentioned, and to the admission of the evidence aforesaid, the plaintiff excepted.

*2nd Exception.* After the evidence detailed in the preceding exception, made part of this, the defendant, under the said ruling, proved by Charles C. Stewart, that he was present at a sale of the land in controversy, made in August 1839, by Somerville Pinkney, as agent or trustee, and purchased the same; that said Pinkney professed to sell the entire estate in said land; that the lessor of the plaintiff lived on the adjoining land, not more than half a mile from the place of sale; that Benjamin Tongue, the eldest son of said lessor, who was then living in his said mother's family, was present at the sale and bid for the property, and that he was at the time of sale in possession of the land and retained possession thereof till the 1st of January 1840, and that before, at and after that time, he was the general agent for his mother; that some time after the sale witness visited the lessor of the plaintiff, and was congratulated by her on his purchase, and she expressed her gratification that he was about to become her neighbor, and that this interview took place before he had paid the most of the purchase money; that several of the children of said John Harrison have admitted to witness that the sale was made by the authority of the children of said John, and also that they had received their share of the purchase money, and that witness entered into possession of said land and subsequently sold the same. And defendant further proved that the interest of witness, so acquired in said land, by sundry mesne conveyances, became vested in the defendant who is now in the possession of the said land. The defendant then further proved by said Stewart, that recently, during the present trial, he had a conversation with said Benjamin Tongue, in course of which Tongue stated, that if it had not been for a claim made by

the defendant for a supposed deficiency of twelve acres, there would have been no difficulty about the land now in question; that in consequence of said claim he, Tongue, had procured a copy of the will of said Benjamin Harrison, and laid it before counsel for advice in reference to said claim, and that said counsel had advised him that his mother was entitled to a moiety, if not the whole of said land, and that it was in consequence of such advice that this action was brought.

The plaintiff then produced said Tongue, and proved by him that at the time of said sale he was tenant of said premises under the said Mrs. Stevenson, and that his term expired on the 1st of January 1840, at which time he delivered possession thereof to said Stewart; that he was present at the sale, and bid for the land on his own account, and that he had no authority to act for his mother at said sale; and that he never heard his mother, at any time prior to the sale, or at any time prior to his advising with counsel as aforesaid, say that she had any claim to the land in controversy; that after the defendant had purchased the land in question, he had a survey made thereof, and complained that there was a deficiency in the quantity of land; the defendant claimed he was entitled to 147 acres, and, in fact, had no more than 135 acres; that in consequence of this complaint, witness laid a copy of said will before counsel, who advised him that his mother was entitled to an undivided half part, if not to the whole, of the said 147 acres; that witness informed his mother of the advice he had received, and, in consequence thereof, this action was brought. And further, that in the interview between witness and Stewart, spoken of by Stewart, he, the witness, stated, that if Stewart had retained possession of said land, he would not have surveyed the land, or claimed for deficiency, and that the present action would not have been brought.

The plaintiff then further proved that at the time of the death of said Benjamin Harrison, which took place in 1825, the lessor of the plaintiff was wife of Thomas Tongue, who died in 1826, and that she sold the land which she acquired

under the will of said Benjamin Harrison, in 1853, to Wm. W. Hall.

The defendant then proved that the plaintiff's lessor is aged about 77 years, and is now in infirm health, and confined to her house, and that in 1825, she was an active and intelligent woman; that letters testamentary on the estate of said Benjamin Harrison were granted to his son and executor in the year 1825, and that he gave bond to pay debts, &c., and that he duly administered the estate of the said testator, and retained or paid and delivered over to the several legatees under said will, their respective legacies, and to the said Thomas Tongue his wife's share of the personal estate, consisting of negroes and other property.

The plaintiff then proved that the said Thomas Tongue died insolvent, and all the personal estate left by him was applied by his administrator in payment of his debts; and further proved that the lessor of the plaintiff sold the part of the aforesaid land which she had held as aforesaid, before the defendant set up his claim for deficiency, and before she was advised of her title to the land in controversy.

The defendant then asked the court to instruct the jury in substance as follows:

1st. That the plaintiff is not entitled to recover, as no evidence has been offered of an actual ouster of the plaintiff by the defendant from the land for which this action is brought, prior to the institution thereof.

2nd. That unless the jury find that the plaintiff has proved the metes and bounds, courses and distances of the land claimed, as laid in the declaration, the plaintiff is not entitled to recover.

3rd. That if the jury find that any part of the 147 acres devised by the will of Benjamin Harrison to Eleanor Stevenson, was, at the institution of this suit, in possession of the lessor of the plaintiff, or her assigns, and so continued, then the plaintiff is not entitled to recover.

4th. If the jury find that $11\frac{1}{2}$ acres, part of the 147 acres mentioned in the will of Benjamin Harrison, were, at the institution of this suit, and have, ever since the death of said

Harrison, been in the possession of the lessor of the plaintiff and her assigns, then the plaintiff is not entitled to recover.

5th. If the jury shall find as stated in either of the two preceding prayers, then the plaintiff is not entitled to recover one undivided moiety of the 135½ acres described in the declaration.

The plaintiff objected to these prayers, and especially to the 2nd, but conceded that it is incumbent on him to show that the land, for the recovery of which this action is brought, was parcel of the dwelling plantation of said Benjamin Harrison, deceased, and parcel of the 147 acres devised by his will in trust for Eleanor Stevenson, and that the same lands are in possession of the defendant.

The court then rejected these prayers, and the defendant excepted, and then further prayed the court to instruct the jury:

6th. If the jury shall find from the evidence that Benjamin Harrison executed the last will and testament given in evidence, and that by the said will he devised to Ann Tongue, the plaintiff's lessor, the real and personal property therein devised and bequeathed to her, and shall further find that the said Ann Tongue accepted and received the said devises and bequests, and sold and conveyed the land which she took under said devise, that such acceptance and sale by the said Ann Tongue was an election to claim under the said will, and that she is thereby estopped from claiming as heir at law of her said father, Benjamin Harrison, the real estate claimed by the declaration in this case, and the jury should find a verdict for the defendant.

7th. If the jury shall find there was a partition made and executed about the year 1839, between Eleanor Stevenson and her husband, and John Harrison and Ann Tongue, of the said 147 acres, and that these devisees and those claiming under them have, since the time of said partition, held their respective parts of this partition, claiming the same, then the plaintiff is not entitled to recover.

8th. That unless the jury believe, from the testimony, that an actual ouster of the plaintiff's lessor has been made by the

defendant, or some of those under whom he claims, from the land sought to be recovered in this action, the plaintiff is not entitled to recover.

9th. That unless the jury shall believe, from the testimony, that the land sought to be recovered in this action is included within the abuttals designated in the nar., the plaintiff is not entitled to recover.

The court granted the 6th, 8th and 9th of these prayers, and rejected the 7th, to which rejection the defendant excepted. The plaintiff then prayed the court to instruct the jury:

That if they shall find that the said Ann Tongue had no knowledge of her title as heir at law of Benjamin Harrison, deceased, to the land in controversy in this suit, (if they shall find that she is one of the heirs at law of the deceased,) at any time prior to the year 1855, and that she was first informed of her title by her son, Benjamin Tongue, after his consultation with counsel, as stated by the said witness, (if they shall find the fact so stated by the said witness,) and that she sold and conveyed the land which she had acquired under the last will of the said deceased, to the said Wm. H. Hall, whilst she was ignorant of her title, as heir at law as aforesaid, to the land in controversy in this suit, and that at the time of the death of the said deceased she was a *feme covert*, and that her husband died in the year 1825, and that he received, in his lifetime, all the personal property which was bequeathed to her by said last will and testament of her said deceased father, and that he died insolvent, and all the personal estate left by him was sold and applied by his administrator to the payment of his debts, then there will be no evidence of an election on the part of the said Ann Tongue to abandon her title as heir at law of her said deceased father, to an undivided interest in the land in controversy in this suit, so as to preclude a recovery by the plaintiff upon the said title of the said Ann Tongue, as heir at law as aforesaid, in case such title is made out to the satisfaction of the jury.

The court rejected this prayer of the plaintiff, and to this rejection, as well as to the granting of the defendant's 6th,

8th and 9th prayers, the plaintiff excepted. The verdict and judgment were in favor of the defendant, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., BARTOL and GOLDSBOROUGH, J.

*Wm. H. G. Dorsey* and *Thos. S. Alexander*, for the appellant:

1st. There was error in granting the defendant's eighth prayer. The defendant, by entering into the common consent rule, undertook to confess, at the trial, lease, entry and *actual ouster*, and that on his failure to do so, judgment by default should be entered against the casual ejector. The common consent rule in all cases dispenses with the necessity for proof of actual ouster. If the defendant had intended to deny the ouster, he should have applied for a special consent rule. *Dorsey on Eject.*, 12, 16. *Adams on Eject.*, 263. 1 *H. & McH.*, 273, *Holt vs. Smith.* 3 *H. & J.*, 19, *Wood vs. Grundy.* 3 *Burr.*, 1895, *Oates vs. Brydon.* Hence the court ought, on the presentation of that prayer, to have withdrawn the case from the jury, and ordered a non-suit to be entered as against the defendant, and a judgment for the plaintiff against the casual ejector. 9 *Gill*, 328, *Clement's lessee vs. Ruckle.* But there is no merit in this prayer, and its granting was erroneous for this reason. The proof of actual ouster is furnished by the defendant himself, and constitutes the only pretext for controverting the title of the plaintiff; he shows an adverse holding by himself and those under whom he claims, under color of a sale under authority of the children of John Harrison to Stewart.

2nd. The first exception assumes that the plaintiff had made out a title in his lessor, as one of the heirs at law of her deceased father, to an undivided moiety of the premises described in the declaration. The defendant sought to bar that title by proof that the entirety of the estate in said premises had been sold by some one, in the year 1829, to one Stewart, with the knowledge, assent and acquiescence of the plaintiff's

lessor. But it is insisted that the relief which a stranger may be entitled to, who has been induced to improve the property of another, by the acquiescence of that other, with knowledge of his rights, is to be administered in *equity alone;* and that the rule does not apply in *equity,* much less at law, where the encroachment is on land, the title to which is equally well known, or equally open to the notice of both parties. To show assent and acquiescence in this sale, on the part of the lessor of the plaintiff, the defendant proved nothing more than that she had notice of the sale, and that some time afterwards she congratulated Stewart on his having become the purchaser of the land. No proof, whatever, was offered tending to show that she had knowledge of her title at the time of the sale. On the contrary, it was clearly shown by the defendant himself, that she was ignorant of her title until the year 1855, shortly before the commencement of this action; and it was further proved that Stewart purchased with notice of the root of the plaintiff's title. The proof, therefore, was clearly inadmissible. On this point, see 6 *H. & J.*, 500, *Lammot vs. Bowly,* and 1 *Gill,* 29, where the case of *Lammot vs. Bowly* is approved. Also, 1 *Gill,* 501, 502, *Casey vs. Inloes.* 20 *Pick.*, 186, *Gray vs. Bartlett.* 2 *Ves.*, *Sen.*, 304, *Ramsden vs. Hylton.* 1 *Ves.*, *Sen.*, 126, *Bingham vs. Bingham.* *Ibid.*, 400, *Cocking vs. Pratt.* 4 *Gill,* 19, *Doub vs. Barnes, et al.*

3rd. There was also error in granting the defendant's sixth prayer, and in rejecting the plaintiff's prayer, for—1st. There is no inconsistency between the assertion of the right of the plaintiff's lessor to the property devised to her by her father, and of her right as one of the heirs at law of her father, to a share of the premises in controversy, which were undisposed of by that will, since the assertion of her right as heir at law cannot disappoint any person pretending to claim under the father's will, or defeat any interest thereby created. 2nd. No election, in fact, has ever been made by the plaintiff's lessor to accept the benefits devised to her, and to abandon her rights as heir at law of her deceased father; and no election is to be presumed from her enjoyment and disposition of

the property so devised to her, since, at the time of such enjoyment and disposition, she was ignorant of her title as heir at law, which she is now seeking to enforce. 3rd. It is not competent for a court of law to put the plaintiff's lessor to an election, much less to adjudge, under the circumstances, that she has elected, and is thereby estopped from asserting her title as heir at law of her father. In support of these positions, see 8 *Gill*, 197, *Jones vs. Jones;* 5 *Md. Rep.*, 306, *Marriott vs. Badger;* 6 *Md. Rep.*, 35, *Pierce, et al., vs. Negro John;* 2 *Story's Eq.*, secs. 1090, 1097, 1098; 1 *Jarman on Wills*, 388; 3 *Ves.*, 332, *Pickering vs. Lord Stamford;* 8 *Gill*, 47, *Stewart vs. Pattison;* 13 *Price*, 782, *Morgan vs. Edwards;* 3 *Mylne & Craig*, 171, *Frank vs. Frank;* 15 *New York*, 365, *Havens vs. Sackett, et al.*

There was also error in granting the defendant's ninth prayer. It is quite clear the plaintiff cannot recover any land outside of the abuttals described in his declaration. But the instruction was calculated to mystify and mislead the jury, by supposing that the land *sought to be recovered in the action* is, or could be, different from the land *described in the nar.* And no instruction ought to have been given on this subject, after the plaintiff had distinctly admitted that it was incumbent on him to show that the land for the recovery of which this action is brought, that is, the land described in the declaration, was parcel of the dwelling plantation of the said Benjamin Harrison, deceased, and parcel of the 147 acres devised by him to John Harrison, in trust for Eleanor Stevenson, and that the same lands were in possession of the defendant. And especially as the defendant had proved that the land in controversy was in possession of defendant, claiming under Stewart, the purchaser from the children of John Harrison. See, also, on this point, the Act of 1852, ch. 177.

*Wm. Meade Addison, Oliver Miller,* and *A. Randall,* for the appellee, argued:

1st. That the evidence in the first bill of exceptions, to the admissibility of which the plaintiff excepted, was properly admitted, upon the ground that if believed by the jury, it

estopped the plaintiff's lessor from setting up title, as a claim under such circumstances, would be a fraud upon innocent purchasers.

The offer of evidence is to be regarded here as if the evidence was actually given, and, in deciding this exception, the court is confined to the evidence contained in it, and cannot look to other parts of the record—each exception is to be considered by itself—and looking to this exception it will be seen that the assent and acquiescence in the sale, &c., was made by Mrs. Tongue *with the knowledge*, at the time of the sale, that she *was entitled to an undivided interest in the land in controversy.* The assertion, therefore, on the other side, that no proof whatever was offered tending to show that she had knowledge of her title at the time of said sale, is entirely without foundation. The point then raised by this exception, is that of *estoppel in pais.* And it is insisted that the conduct of Mrs. Tongue, as detailed in this exception—her knowledge of, assent to, and acquiescence in, the sale of this land, in 1839, at public sale, for its full value, and her knowledge that the purchaser and those claiming under him, including the defendant, entered upon the land, used and cultivated it as their own, erected buildings, and made other valuable improvements thereon, and so continued to do for more than sixteen years, and all this with a knowledge, at the time of sale, that she was entitled to an undivided interest therein—amounts to an estoppel; that for her now to assert her claim, is a fraud upon innocent purchasers. That this defence may in this State be asserted *at law* as well as in *equity*, is clear from the decision of this court in 1 *Gill*, 501, 502, *Casey vs. Inloes*, where it was considered, and if the facts of that case had sustained it, it would have been held a bar to the ejectment. Besides, this defence proceeds upon the ground of fraud, which, by all the authorities, is as well cognizable in a court of *law* as a court of *equity.* 4 *H. & McH.*, 404, *Boreing's lessee vs. Singery.* 4 *Gill*, 19, *Doub vs. Barnes, et al.* 1 *Burr.*, 396, *Bright vs. Eynon.* It is submitted, therefore, that this defence may be availed of *at law.* This being so, the decisions of our own courts in 8 *Gill*,

251, *Alexander vs. Walter;* 2 *Md. Rep.*, 405, *Doub vs. Mason;* 10 *Md. Rep.*, 316, 317, *Funk vs. Newcomer;* 8 *Md. Rep.*, 251, *McClellan vs. Kennedy;* clearly show that the facts stated in this exception amount to an *estoppel in pais.* In the able note by Hare & Wallace to the *Dutchess of Kingston's case,* in 2 *Smith's Lead. Cases, (Ed. of* 1855,) from pages 642 to 652, and 660, 661, 662, all the English and American authorities, up to that time, will be found collected and commented upon with great accuracy and ability. From these it will appear that a vast preponderance of authority is in favor of the position that this doctrine applies to titles both of personal and real estate, and may be availed of in courts of law as well as equity. It is a doctrine founded upon the highest principles of morality, and recommends itself to the common sense and justice of every one; it concludes the truth in the particular case in order to prevent fraud and falsehood, and imposes silence on a party only when, in conscience and honesty, he should not be allowed to speak. The result of all the cases is that expressed by Ch. J. Shaw, in *Gray vs. Bartlett,* 20 *Pick.*, 193, that "where one stands by and sees another laying out money and making large investments upon property to which he himself has some claim or title, and he does not give notice of it, he cannot afterwards, in equity and good conscience, set up such claim or title." We have already shown that this exception presents the case of *knowledge* on the part of Mrs. Tongue of her title at the time of the sale, and her long assent, silence and acquiescence, coupled with this knowledge of her title, bring her case fully within the principles of the decisions above cited. It is only necessary to add that the most recent decisions, made since the publication of the edition of *Smith's Lead. Cases,* above referred to, have followed out and extended the same doctrine. See 25 *Conn.*, 118, *Preston vs. Mann, et al. Ibid.*, 250, *Taylor, et al., vs. Ely, et al.* 35 *New Hamp.*, 99, *Corbett vs. Norcross.* 3 *Sneed,* 447, *Merriwether vs. Larmon.* And ignorance of law, where the party has full knowledge of the facts, makes no difference in the application of this doctrine. 1 *Johns. Ch. Rep.*, 516,

*Shotwell vs. Murray.* 6 *Johns. Ch. Rep.*, 166, *Storrs vs. Barker.* 7 *Ind. Rep.*, 301, *Barnes vs. McKay & Wife.*

2nd. That the evidence shows that the plaintiff's lessor *elected* to take under the will of Benjamin Harrison, and that, having so elected, she is *estopped* from claiming, as heir at law of her father, a moiety of the lands described in the nar.

This point is raised by the granting of our sixth prayer, and the propriety of that ruling, we confidently assert, can be maintained. The case of *Marriott vs. Badger*, 5 *Md. Rep.*, 306, and the cases there cited in argument, show that an election, when *actually made*, may be availed of in a court of law. The personal property bequeathed by this will to Mrs. Tongue, was delivered over to her husband, by the executor, in 1825. The husband died in 1826, and from that time she held the residue of Holly Hill farm, devised to her by this same, till 1853, when she sold and conveyed it, and received the purchase money therefor. Does, then, the doctrine of election apply to such a case as this? It is said, the devise of the land in controversy *being void by operation of law*, the question of election does not arise. But it is submitted that the case of *McElfresh vs. Schley*, 2 *Gill*, 181, has decided this very point. There the will attempted to devise *after-acquired* real estate, and it was held that parties to whom other lands were devised by the same will, could not claim, as *heirs at law*, their shares of this after-acquired land; that they must be put to their election. The devise there, was of all the other lands "of which I am now possessed, *or of which I may be possessed* at the time of my death." The *intention* of the testator was clear to convey his after-acquired lands, but *the law* said such lands could not pass by his will; the devise was, therefore, *void by operation of law.* In the present case, the *intent* of Benjamin Harrison, that the children of his son, John Harrison, should take the land in controversy, in the event which has happened, is perfectly manifest; no one can doubt it. But the devise was held void *by operation* of law, because of remoteness. In both cases, therefore, the *intent* is equally clear, and in both the devise was held void for the same reason.

In the one, it was held that a party could not take other devises and benefits under the will, and at the same time set up a claim as heir at law, which would defeat the expressed *intention* of the testator, though the law had declared such intention to be inoperative; that he must be put to his *election*. Here Mrs. Tongue *has taken* other devises and benefits under this will, and she now sets up a claim as *heir at law*, which will defeat the *expressed intention* of the testator, which intention, however, has been decided to be inoperative. The same rule must be applied to her; she has *elected* to take under the will, and she cannot defeat any of its provisions. This case of *McElfresh vs. Schley*, being a decision of our own court, and directly in point, is binding upon this tribunal, and, it is submitted, is decisive of the point under discussion. For other cases and authorities in which it has been held an election had taken place, see 2 *Dickens*, 463, *Ardesoise vs. Bennet;* 1 *Ves., Jr.*, 171, *Butricke vs. Broadhurst;* 2 *Roper on Legacies*, 439, 441; 1 *Ball & Beatty*, 23, *Stratford vs. Powell;* 1 *Saxton*, 227, *Stark vs. Hunton;* 7 *Dana*, 6, *Clay vs. Hart;* 1 *Edw. Ch. Rep.*, 210, *Leonard vs. Crommelin; Cheves' Eq. Rep.*, 41, *Wilson vs. Hayne;* 8 *Leigh*, 400, *Kinnaird vs. Williams;* 2 *Henn. & Munf.*, 392, *Upshaw vs. Upshaw;* 12 *Pick.*, 146, *Reed vs. Dickerman.*

3rd. The plaintiff's lessor being tenant in common with the defendant and those under whom he claims, it was necessary to prove *actual ouster*, to entitle her to bring ejectment.

The general rule in cases of ejectment by one tenant in common, is such as above stated. But it is said, that having entered into the general consent rule, the ouster is confessed. But in the case of *Barnitz's lessee vs. Casey*, 7 *Cranch*, 456, which was a Maryland case, argued by the most celebrated Maryland lawyers of that day, the Supreme Court decided, that, in such a case, the general consent rule did not dispense with proof of actual ouster. There is no Maryland *decision* to be found to the contrary. The only Maryland authority the other way, is *Dorsey on Eject.*, 16, but it is submitted that this cannot overrule a solemn decision of the Supreme Court of the United States, upon the very point. The same

point was decided in Virginia, in 10 *Leigh*, 457, *Taylor vs. Hill.* It is submitted, therefore, that granting of the defendant's eighth prayer was proper.

4th. That unless the land sought to be recovered is included within the abuttals designated in the nar., the plaintiff was not entitled to recover.

We had the right to submit this proposition of law to the jury, no matter how clear the evidence upon the point may have been. The prayer leaves it to the jury to find the facts, and there is nothing in the Act of 1852, ch. 177, dispensing with the necessity of such proof in a case like this. The ruling, therefore, upon our ninth prayer must be sustained.

GOLDSBOROUGH, J., delivered the opinion of this court.

This is an action of ejectment, brought by the appellant against the appellee, in the circuit court for Anne Arundel county.

The appellant declared for a tract of land called "Holly Hill Farm," lying in Anne Arundel county, and also in another count for an undivided moiety of the same land. He set out his pretensions in his nar., by metes and bounds.

The appellee came into court and prayed to be made defendant, and was required to enter into the consent rule, and confess lease, entry and actual ouster, which he did accordingly; and declining to take defence on warrant pleaded not guilty.

At the trial of the cause, and after the plaintiff had offered evidence to establish the lessor's title to the land in controversy, the defendant submitted the evidence contained in the first exception, to which the plaintiff objected, but the court overruled the objection and permitted the evidence to go to the jury, with the proviso mentioned in this exception.

The defendant then, under the ruling of the court, offered further evidence tending to prove that the lessor of the plaintiff, at the time of the sale as aforesaid, knew that she was entitled to an undivided interest in the land in controversy, and with such knowledge did assent to, and acquiesce in, the sale. The plaintiff excepted.

Tongue's Lessee *vs.* Nutwell.

After the evidence had been given as detailed in the first exception, and the court had ruled as stated therein; the defendant, under this ruling, submitted the evidence contained in the second exception, and the plaintiff also offered his evidence mentioned in the same exception. The defendant then submitted nine prayers, all of which were rejected by the court except the 6th, 8th and 9th, and the plaintiff offered the prayer mentioned in the second exception, which was rejected. To which ruling of the court in granting the defendant's 6th, 8th and 9th prayers, and the rejection of the plaintiff's prayer, the plaintiff excepted. The verdict and judgment being for the defendant, the plaintiff appealed.

In the able argument of the counsel of the appellee, they submitted four points for our consideration:

1st. "That the evidence in the first bill of exceptions, to the admissibility of which the plaintiff excepted, was properly admitted, upon the ground, that if believed by the jury, it estopped the plaintiff's lessor from setting up title, as a claim, under such circumstances, would be a fraud upon innocent purchasers."

2nd. "That the evidence shows that the plaintiff's lessor *elected* to take under the will of Benjamin Harrison, and that having so *elected*, she is, *estopped* from claiming, as heir at law of her father, a moiety of the lands described in the nar."

3rd. "The plaintiff's lessor being tenant in common with the defendant, and those under whom he claims, it was necessary to prove *actual ouster* to entitle her to bring ejectment."

4th. "That unless the land sought to be recovered is included within the abuttals designated in the nar., the plaintiff was not entitled to recover."

As to the third and fourth points, corresponding with the eighth and ninth prayers granted; we regard the actual ouster as conceded by the whole current of the appellee's testimony. He shows that he has been, and now is, in adverse possession of the whole 135½ acres. That he has made valuable improvements thereon, and litigates the appellant's pretensions upon grounds wholly foreign to the idea of the continuance of a

tenancy in common. Yet if there was any apparent force in the appellee's third point, we regard it as answered by applying the rule laid down in *Dorsey on Ejectment*, page 16, and sustained by *Adams on Ejectment*, 263, *Edition of* 1846, that "the defendant ought to have applied to the court upon affidavit, for a special rule to confess lease, entry, and not ouster; and if a tenant in common, &c., acknowledges the ouster, he will be precluded from denying, or in other words, of showing, that the plaintiff has not been injured." And the appellee not having taken defence on warrant, thereby concedes the general identity of the premises in controversy, and cannot controvert, under his general issue, the location of the appellant's pretensions as set out in his nar. These prayers should, therefore, have been rejected.

The sixth prayer of the appellee should have been rejected also; we do not consider the question of election, as involved in this case. The conduct of the plaintiff's lessor indicates neither an intention to defeat any provision in her father's will, nor, by taking under it, does she manifest the purpose of making her election; we cannot better express our view on this point than by adopting the language contained in the following quotation from *White & Tudor's Leading Cases in Equity*, 65 *Law Library*, 275.

"The principle of election by implication, in equity, depends upon the circumstance, that the same instrument which transfers or conveys certain property of the testator's to one legatee or devisee, transfers and conveys certain other property to another legatee or devisee, and that the former beneficiary, availing himself of the instrument in one particular, must not defeat its operation in another. But if the latter devise or bequest be invalid—if the instrument in respect to it be legally inoperative and void—the former beneficiary's retaining his own property, does not defeat the operation of the instrument. If it be a will, it does not defeat the intention of the testator legally declared. Retaining the subject of the transfer does not disappoint the instrument, if the law has already avoided and nullified the transfer. This occurs in the case of a devise of land by a *feme covert*, or

an infant, or under a will not executed, so as to pass lands. There is in such cases, no election from *implied* intention." This court decided in the former case of *Tongue vs. Nutwell,* 13 *Md. Rep.,* 415, that the provisions in the will, in relation to the property now in controversy, was void by operation of law.

But it is confidently maintained by the appellee, that the lessor of the plaintiff is estopped by the knowledge of her title; and that her conduct in reference to the lands in controversy, created an *estoppel in pais.* We have looked through the record in vain for the evidence to sustain this point. The appellee, and those under whom he claims, clearly come under the operation of the principle of *caveat emptor.* The same means and opportunity of tracing title were equally open to both appellant and appellee. The will of Harrison was on record, and therefore, within the reach of any one who might be interested in the inspection of it. It is apparent to us that the lessor of the plaintiff, resting as she did, from the death of her father, at which time her title, as heir at law accrued, until 1855, when she first received an intimation of her right, acted in total ignorance of that right, and no legal inference of knowledge can be drawn from either her acts or declarations.

It is insisted that, "when one stands by and sees another laying out money and making large investments upon property, to which he or she has some claim or title, and does not give notice of it, he cannot afterwards, in equity and good conscience, set up such claim or title." This language is quoted from Chief Justice Shaw, in the case of *Gray vs. Bartlett,* 20 *Pick. Rep.,* 193, where he further says, "We think this is a very just and well settled principle when well understood and properly applied. The principle insisted on requires some qualification, and can only be held to apply against one who claims under some trust, lien or other right, not equally open and apparent to the parties, and in favor of one who would be deceived or misled by such want of notice. But where the act of one is an encroachment on the soil or rights of another, an acknowledged *tort*, equally well known or equally open to the notice of both parties, it gives no right

until it has continued for such length of time, without interruption, as to found the presumption of a grant, or give effect to the limitation of the right of action for the disturbance, as determined by the common law or by statute."

We regard this a sound illustration of an *estoppel in pais*, and are sustained in the adoption of it by this court in the case of *Casey's lessee vs. Inloes, et al.*, 1 *Gill,* 502, where the case in 20 *Pickering*, is quoted with approbation.

*Judgment reversed and procedendo awarded.*

