# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 2, 1896.

EVERETT, ET AL.,

VS.

REED, EXECUTOR, ET AL.

*J. C. Everett* and *D. K. E. Fisher* for plaintiffs.

*Henry Stockbridge, Jr., William A. Fisher, W. I. Washburn, J. Converse Gray* and *John P. Poe* for defendants.

DENNIS, J.—

The bill and amended bill of complaint in this case were filed by certain of the heirs-at-law and next of kin for the purpose of procuring the construction by the Court of the last will and testament of the late Joseph Henry Stickney, and a decree declaring certain of the devises and bequests made by it to be void and inoperative, and that the property attempted to be passed thereby to the legatees and devisees is vested in the heirs-at-law and next of kin of the testator.

The several devises and bequests originally attacked were those contained in the 50th, 51st, 52d, 54th, 57th, 58th, 65th, 75th and the 76th in residuary clause; but at the hearing, the contests as to all these devises and bequests were abandoned, except as to those contained in the 50th, 51st, 65th, 75th and 76th clauses.

I will consider these in the order in which they occur.

1. The 50th clause provides: "I give and bequeath to the 'First Congregational Church of Baltimore,' the sum of $2,000 in trust, to pay out, appropriate and apply the same in such manner, as in the judgment of the Trustees of said 'First Congregational Church,' shall be most for the benefit and advantage of the Congregational Church or Society in the town of Frostburg." It is objected that, under its charter, the First Congregational Church of Baltimore has not the corporate capacity to take such a gift as trustee, and that the object of the gift is too indefinite.

I think both of these objections are fully answered by what Judge Alvey says in the case of Eutaw Place Baptist Church vs. Shirley, 67 Md. p. 496, and by the case of Crisp vs. Crisp, 65 Md. 422. The case of Jones vs. Habersham, 107 U. S. 182, is also directly in point. In that case, as here, the corporation had no express power under its charter to take and administer a charitable bequest; and the Court says: "It is objected that this corporation is not empowered under its charter to accept and administer this charity. But it is a novel proposition, as inconsistent with the rules of law as it is with the dictates of religion, that a Christian church or religious society cannot receive and distribute money to poor churches of its own denomination so as to promote the cause of religion in the State in which it is established. To hold this gift to be too indefinite and uncertain would be to disregard the elementary principles of the law of charitable uses. The appropriation of a certain sum annually to one or more churches of a certain denomination in such destitute and needy localities as the trustees may select, so as to promote the cause of religion among the poor and feeble churches of the State, describes the general nature of the charitable purpose, while leaving the selection of the particular objects to the Trustees, and is a good charitable use, sufficiently defined.

2. The 51st clause provides: "I give and bequeath to the 'First Congregational Church of Baltimore' the sum of $2,000, in trust, to pay out, appropriate and apply the same in such manner as in the judgment of the trustees of the said 'First Congregational Church' shall be most for the benefit and advantage of the 'Second Congregational Church of Baltimore'." The same objections are urged against the validity of this bequest as against the

one just considered; and as the two bequests are identical in their general character, it is evident that they must be governed by the same principles. This bequest, also, therefore, I hold to be valid.

3. The 65th clause is as follows: "I give and bequeath to 'Colorado College, Colorado Springs, El Paso County, Colorado, the sum of $20,000, the same to be applied by the Board of Trustees of the College as they think advisable."

It is urged that here the object of the bequest is wholly undefined, the gift being to the trustees to be *used as they think advisable*, and hence the trustees could apply it to their own use or for any other purpose they might choose wholly unconnected with the college.

I do not think this a proper construction of the bequest. It is clear that it was never intended by the testator that the trustees should have any beneficial interest in the gift. It was made to the college, in terms, and the trustees were only authorized to disburse it; it must be construed, therefore, as intended to be disbursed by them for the lawful objects of the college within the scope of its chartered powers, although subject to that limitation, their discretion was to be uncontrolled. This seems to be the natural and necessary construction of the bequest, and it is therefore valid.

That it would not be allowed to be misapplied by the trustees is clearly shown in Barnum vs. M. & C. C., 62 Md. 299.

4. The 75th clause contains a great many subdivisions. It is contended by the plaintiffs that the whole bequest is void by reason of the first section; and that Nos. 1, 4 and 5 are void for additional and independent reasons.

The first section reads as follows: "I give and bequeath to the following persons, to be known as the 'Trustees of the Stickney Fund,' the following sums of money, to be appropriated for the purposes herein mentioned, namely: To the President of the "Pilgrim Society of Plymouth, in the State of Massachusetts," Charles B. Stoddard, Treasurer of the said Pilgrim Society, and President of the Plymouth National Bank, William S. Danforth, secretary of said Pilgrim Society, and President of the Plymouth Savings Bank, William S. Morissey, President of the "Old Colony National Bank" of Massachusetts, Albert Davis (of the town of Whitman) Treasurer of Plymouth County, Massachusetts, the chairman of the selectmen of the town of Plymouth, Massachusetts, and the Judge of the Court of Probate of Plymouth County, Massachusetts, and to the survivor and survivors of them, and to their successors in the said official positions, now held by them respectively, that is to say:" then follows numerous gifts for various patriotic purposes, associated with the town of Plymouth, and intended to be applied to the preservation and beautifying its historic spots.

The objection urged by the counsel for the plaintiffs to the whole of this bequest is because the gift is to contain named persons holding official positions, and given to them in their official capacity; and as the offices may cease to exist, or the present occupant may die, in which latter event the estate is not to pass to their heirs or personal representations in succession but to certain undefined persons to become from time to time occupants of the offices, therefore there is no definite and lawful provision for succession.

It is conceded that so far as the present occupants of the offices are concerned, they are sufficiently ascertained, especially as some of them are actually named; and if this be so, it seems to me sufficient, as a Court of Equity will never allow a trust to fail for lack of a trustee. It is not like the case of a bequest to a trustee, who is incompetent to take, in which event the gift will be void; but it is a case where concededly those named are ascertained and competent when the gift takes effect, but it may not be certain, in the event of possible contingencies, who their successors will be. When the gift once takes effect, a Court of Equity will see that it does not subsequently fail for lack of a trustee to hold it; and this distinguishes this case from State vs. Warren, 28 Md. 338.

The three subdivisions under this 75th clause, which are independently attacked, are the following:

Sub-clause 1, which provides, "I give and bequeath to the said 'Trustees of the Stickney Fund,' the sum of $4,000, to be paid by them to the Standish Monument Association, of Duxberry, Massachusetts, to be appropriated by said Association to the placing of a

plain but substantial stone wall entirely around the lot belonging to the "Standish Monument Association," in the town of Duxberry, and to the entire removal of all trees and shrubbery from said lot, and to providing a proper roadway to the Standish Monument from some convenient point on the public road of said town."

I can see no objection to the validity of this bequest. The trustee is competent to take, and the duties prescribed and the objects of the gift are within its corporate powers, and are explicit and well-defined. It is clearly within the principles announced in Halsey's case, 75 Md. 275.

The 4th sub-clause provides: "And believing it would be for the great advantage of said town of Plymouth to widen Middle street from Main street to Cole's Hill, thereby rendering Cole's Hill more accessible, as well as opening it to view from Main street, I give and bequeath to the said 'Trustees of the Stickney Fund' the sum of $12,000, to be appropriated and applied by them to aid in so widening said Middle street —upon the condition, however, that the said town of Plymouth shall make the said improvement, and shall enter upon the work of making the same within one year of my decease; otherwise, the said $12,000 shall pass into and be a part of the residue of my estate."

There is no difficulty about this bequest, except that it has not been shown that the town of Plymouth has commenced the improvement within the period prescribed by the testator. If they have, the bequest is good; if they have not, it is void; but time will be given them before final decree, to prove a compliance with the condition, if it has been complied with.

The 5th sub-clause provides: "And if the 'Pilgrim Society' in the said town of Plymouth shall think it advisable to remove the canopy now over the 'Rock' to 'Cole's Hill,' to be placed, say, opposite to Middle street, and place under it a granite shaft or obelisk to the memory of those who died during the first winter and were buried on "Cole's Hill," and after such removal to place around the said rock a light but substantial iron structure, which will afford perfect security to the "Rock" while not dwarfing it in size or appearance, the lot where the canopy now stands to remain as at present, and the said "Rock" to be slightly raised, if it will admit of it; then I give and bequeath to the said "trustees of the Stickney Fund the sum of $10,000, to be appropriated and applied to the carrying out of the said plan of removal; otherwise the said sum of $10,000 to pass into and be a part of the residue of my estate."

It is evident that this is not an absolute gift; it is made upon the express condition that, before it shall take effect, the beneficiary shall perform certain acts, which it may or may not do, at its pleasure; and it differs from the bequest last considered in that it provides no time within which the conditions named must be complied with. It is therefore, void, as being within the rule against perpetuities.

5. The bequests in the 76th (being the general residuary clause) are likewise void, in my judgment, for the same reason.

So much of that clause as is necessary to be quoted reads as follows: "I give, devise and bequeath all the rest of my estate * * * unto the body corporate formerly existing as a corporation under the name of the "American Congregational Union," but which has laid aside that name, and is now properly designated as the "Congregational Church Building Society," which has its offices in "Bible House," in New York City, and in the "Congregational House," in Boston, and of which H. O. Pinnea is (or lately was) treasurer; and I expressly hereby require as a condition of the vesting of this legacy, that the said residuary legatee, the said 'Congregational Church Building Society," shall release all claim which it has against the "First Congregational Church of Baltimore," for any fund or funds, or money, owing by said Church to it, and any and all claim and demand that it has to, for or against any and all property in the City of Baltimore now occupied by said Church, and shall execute to said Church a good and valid legal assignment, transfer and release therefrom; and shall in like manner release the "Second Congregational Church of Baltimore," and the "Canton Congregational Church of Baltimore County" from any and all claims and demand, which it has or shall have against either of said churches, or any property of any kind, used by or in possession of said

"Second Congregational Church of Baltimore," or said "Canton Congregational Church of Baltimore County."

It will thus be seen that this is not an absolute gift to the legatee, the payment of which is fixed upon future contingencies, in which case a reasonable time should be allowed for the happening of those contingencies; but the testator expressly declares, that the estate shall not *vest*—i. e.—no title shall pass until certain conditions precedent have been complied with, and no time is fixed within which they must be so complied with.

The rule against perpetuities is stated in Barnum vs. Barum, 26 Md. 271: "If an estate be so limited as by possibility to extend beyond a life or lives in being at the time of its commencement and twenty-one years and a fraction of a year afterwards, during which time the property would be withdrawn from the market, or the power over the fee suspended, it is a perpetuity and void, as against the policy of the law. In all such cases to give effect to the limitation over the contingency *must* happen within the time prescribed by the rule. If it *may* happen *after* that time, then the preceding estate tends to a perpetuity, which the law abhors and forbids." And in Lewis on Perpetuities, p. 478, it is laid down: "The rule obviously condemns as invalid every gift of a *future* interest in property, made to depend on an event, which, although it may possibly happen within the allowed period, may possibly not happen until the expiration of such period. Let the event contemplated be what it may, and the probability of its early occurrence as great as it may, it will in every case be of too remote expectancy, and a limitation on it will therefore always be void, unless either from the nature or internal quality of' the contingency, or from express provision and restriction, it be certain that the event which is to give effect of a limitation will happen, if at all, within the period of lives in being and twenty-one years."

This bequest under the 76th clause, it will thus be seen, falls directly within the rule. The testator expressly declared it should not vest in the legatee, until the conditions were complied with; it vested therefore, at his death, immediately in his heirs at law and next of kin, and if the legatee could

take it at all, it would be virtue of an attempted limitation over upon an event for which no time is fixed, and the time for which is dependent upon the will of a corporate body to be exercised, not within a life or lives in being, but at any time, or indeed may not be exercised at all; and this the law will not permit.

That the testator used the word "vest" in the sense given to it above, is, I think, clear from the will itself. It was a carefully drawn instrument, the work of a lawyer, who must be supposed to know the meaning of legal terms; and that he did know them is shown by the different language used in those clauses of the will where the gift is made to take effect at once, but the time for the *payment of the legacy is suspended* until a condition has been complied. Thus, in the 54th clause, he bequeathes $50,000 to the American Missionary Society, "provided, however, that this legacy is made upon the ·condition that *before the same shall be paid*, and within a reasonable time after my decease, the said Association shall change its name." And in the 52d clause, he made the condition that "before the same should be payable" the name should be changed. Again in the 57th clause, the bequest was declared "not to be payable" until the legatee's name should be changed so as to have in it the word "Congregational." It is apparent, therefore, that the testator used the expressions discriminatively; and it must be presumed that he intended by these con·trasted terms to indicate different ideas. See In re Thurston's Will, 17 Simons 25.

But even if there was not this positive evidence on the face of the will itself that the testator used the word *vest* in its technical sense, the legal presumption is that he did so use it, unless the will shows a contrary intention. It is a word of art, and the well established rule of construction is that such words are always to be construed in a technical sense, unless there is clear evidence in the will itself that another signification was intended; Thahisson vs. Woodford, 4 Vesey p. 329; In re Thurston's Will, 17 Simon 25; 2 Williams on Executors 557.

And even if this construction were doubtful, yet it must be adopted; for

the law will not allow the heir to be disinherited upon conjecture; and if there be two equally probable interpretations of a will, that one is to be adopted which prefers the kin of a testator to strangers; Quinn vs. Hardenbrauk, 54 N. Y. 86; and in Ridgely vs. Bond, 18 Md. 448, our Court of Appeals says: "The title of the heir-at-law being clear and obvious, no words in a will ought to be so construed as to defeat it if they can have *any other signification.*"

If it be said that the effect of such a construction, by defeating the bequest to the legatee, is to defeat the testator's intention, yet that results from the operation of a rule of law which no attempt of the testator will be allowed to override. The rule against perpetuities is a rule of policy, and is applied wholly irrespective of the testator's wishes or intent, upon considerations of the highest public interest, and it must necessarily defeat the testator's intent in every case in which it is applied. To give effect to such a contention, therefore, means nothing less than the complete abrogation of the rule, as no case can be conceived of where its application would not equally have the result of defeating the testator's intentions.

The case of Smith vs. Meth. Church Extension Society, 56 Md. 394, is relied on by the counsel for the defendants to show that although the estate may have vested in the heirs at law and next of kin upon the death of the testator, it was subject to be divested and to vest in the legatee, if the conditions imposed never performed within a reasonable time. But that case was altogether exceptional, depending upon the express provisions of our Constitution, and was in no way intended to qualify or limit the general rule in regard to the perpetuities or the destiny of estates. It was there held that, although the property at the death of the testator, became vested in the heirs-at-law and next of kin, yet it became divested out of them and vested in the legatee by *virtue* of a *Legislative Act* in pursuance of constitutional authority. The Court says: "This results from the provisions of the organic law, which has clothed the Legislature with the power to sanction the legacies; when sanctioned, the *Legislative Act relates back to the death of the testatrix, and the legacies take effect from that time.* In such case, no rights vested in heir or next of kin which were not subject to be *divided* by the act of the legislature, sanctioning the legacies," pp. 394-395.

It is not doubted that the legislature has the power to change the rule about the vesting of estates, so as to destroy the rule against perpetuities; but until they have done so, as they did in the above case, the general doctrine must be applied.

It is also contended on behalf of the defendants, that the legatee was bound to perform the conditions and elect to take the legacy before the personal estate has been closed; and as by law it ought to be closed within a year, this period—*i. e.* one year—is a time limitation which complies with the requirements of the rule.

The answer to this is two-fold; first, it is not true that the estate *must* be closed within one year from the testator's death. The law merely requires that the testator shall return his account at the end of one year; and then, if the estate is not ready for closing, he returns another at the end of six months, and so on until the estate is finally closed—so that the actual time for closing the estate, is wholly indefinite.

Secondly—The well established rule of construction is, that where, in the same will, there is a devise and bequest, all must be governed by the rules applicable to the devise. 2. Redfield vs. Wills (3rd Edn.) 244—Jones vs. Wynford, Small and Giff: 59. Now, the obligation of an executor to close the estate has nothing to do with the real estate, with which he has no concern, and which passes directly by the will. What limitation is there, then, as to the realty within which the legatee must make his election, and thus divest the estate which had become vested in the heirs at law? Manifestly more; and, as both realty and personalty are embraced in this residuary clause, and as the latter follows the '

same disposition and is governed by the same rules as the former, if the legacy is void as to the realty by reason of having no proper period fixed for its vesting in the legatee, it is void likewise as to the personalty.

But it is contended that as the plaintiffs, who were nieces and nephews of the testator and to each of whom considerable legacies were given, having accepted these bequests, are concluded by the doctrine of election, which will not allow them to take under the will, and at the same time assent to invalidity.

But if the conclusion reached above, viz: that this residuary bequest is void because it infringes the rule against perpetuities is sound, then the doctrine of election has no application. Our Court of Appeals, in Tongue's lessee vs. Nutnell, 17 Md. 229, thus defines and limits the doctrine: "The principle of election by implication, in equity, depends upon the circumstance, that the same instrument which transfers or conveys certain property of the testators to one legatee or devisee, transfers and conveys certain other property to another legatee or devisee, and that the former beneficiary, availing himself of the instrument in one particular, must not defeat its operation in another. But if the latter devise or bequest be invalid—if the instrument in respect to it be legally inoperative and void—the former beneficiary's retaining his own property, does not defeat the operation of the instrument. If it be a will, it does not defeat the intention of the testator legally declared. Retaining the subject of the transfer does not disappoint the instrument, if the law has already avoided and nullified the transfer." See also Barbour vs. Mitchell, 40 Md. 167.

As I am of the opinion that this 76th clause is void because it is in violation of the law against perpetuities, it is unnecessary to discuss the other objections urged against it, based upon the incapacity of the legatee to take under the provisions of its New York charter.