John S. Barbour and Susan Barbour, his Wife, and Ellen C. Daingerfield *vs.* Henry S. Mitchell.

*Devise — The doctrine of Election, as applicable to a case, where a Testator undertook to dispose of property which he expected to receive under the Will of a person whose death did not occur until after his own.*

S. by his last will and testament gave to his two nieces as tenants in common all the property, *"which I may hereafter acquire by devise or bequest from my friend* (B.) *by whose last will and testament as now executed,* I am sole legatee and *devisee,* to be equally divided between them," &c.; by the same will he gave to his nephew M. valuable real and personal property, and made him and his said two nieces his residuary legatees and devisees in equal proportions, the three being also his only heirs at law and next of kin. After his death they entered upon, and took possession of the real and personal estate devised and bequeathed to them respectively. B. did not die until after the death of S. whom he made his sole legatee and devisee. M. claiming that S. died intestate as to the property so left to him, filed a bill in equity against the nieces for a partition thereof between himself and them as heirs and distributees of S. and also sued them at law as sureties on the administration bond of their deceased father, who had administered on the personal estate of B. for his distributive share of said estate. On a cross bill filed by the defendant in that case, asking that M. might be enjoined from further prosecuting his action at law, and might be required to convey to them his supposed interest in the real estate of B. it was Held:

1st. That the fact that S. had no devisable interest in the property of B. at the time of making the will, or at the decease of the former, would not conflict with the doctrine of election.

2nd. That the doctrine of election was applicable to this case; and M. having taken possession of the real and personal property devised and bequeathed to him by S. should be enjoined from further prosecuting his bill in equity and suit at law against the nieces of S.

The case of *McElfresh vs. Schley,* 2 *Gill,* 181, examined and approved, and distinguished from the case of *Tongue vs. Nutwell,* 17 *Md.* 212.

APPEAL from the Equity side of the Circuit Court for Prince George's County.

The facts of the case are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, GRASON and MILLER, J.

*R. B. B. Chew, Wm. H. Tuck* and *Reverdy Johnson,* for the appellants.

The will shows an intention, that if Mitchell took the property devised to him, he should derive no benefit under Brinham's will, and that all his property should go to the nieces.

The intention being assumed, the conscience of the donee if affected by the condition, not express, but implied, which is annexed to the benefit proposed to him, that he will adopt the whole—conforming to all its provisions, and renouncing every right inconsistent with it. The general rule being that a person cannot accept and reject the same instrument. 2 *Story's Eq.,* sec. 1077 ; *Noys vs. Mordaunt,* 2 *Vern.,* 581 ; *Streatfield vs. Streatfield,* 1 *White & Tudor's Equity Cases,* 333, 335, *and notes; Thellusson vs. Woodford,* 13 *Vesey,* 209 ; *Dillon vs. Parker,* 1 *Swanston,* 359, *note B.*

Much of the argument of the appellee was based on the idea that Sewall's will was invalid, and should be treated as a void will, or a void devise, so far as concerns Brinham's property, and this is a view taken in the opinion below.

This is true in reference to the wills of minors, married women, and some others, which are not proper instruments of evidence and cannot be received in evidence. It applies only to such as are not wills. But how can that be said of Sewall's will? So far from being void or invalid as an instrument of evidence, it is in all respects a perfect will, and

admissible in evidence, though this devise may be ineffective; the only question being as to its effect, as a whole, on the question in hand. *McElfresh vs. Schley,* 2 *Gill,* 181, 200, 201.

But even in the case of invalid wills—for instance, not executed to pass real estate, though there may be no election from *implied,* there may be from *actual* intention on the part of the testator, to be gathered from the whole will, so as to prevent the failure of important provisions to the prejudice of one or more of the objects of his bounty. 1 *White & Tudor's Cases in Equity,* 375.

The principles of election and compensation appear to have been extended in recent times to cases not formerly embraced by them, for the advancement of justice as against devisees refusing to do equity according to the intent of the testators.

When the books speak of a testator's intention to raise an election, they are not to be understood as meaning an intention by express words, but only that such intent must, by construction, appear from the whole will. *McElfresh vs. Schley,* 2 *Gill,* 181, 199, 200; *Waters vs. Howard,* 1 *Md. Ch. Dec.,* 112.

Sewall must be presumed to have known that he could not validly dispose of Brinham's property, so as to give effect to his will in reference to his nieces, without the consent of Mitchell, and must therefore have intended that Mitchell should give his will such effect by taking none of Brinham's property.

It makes no difference whether he thought he was dealing with his own or not; the inquiry is, did he undertake to devise what did not belong to him? *McGinnis vs. McGinnis,* 1 *Kelly,* 496, 503; *Stump, et al. vs. Findlay,* 2 *Rawle,* 168, 174.

In what respect does the case of a will devising after acquired lands, differ from the one under consideration? We mean as of the time of making the wills, when the intention of the testators was manifested.

In the case in 2 *Gill*, 181, the devisor had no control of the land he attempted to devise, for he had not made the purchase. As to such property the will was wholly inoperative, and of no effect whatever, and at the time of his death, it had no more effect *as a devise* of the title to the person who afterwards claimed the land, for the Act of 1849 had not then been passed. How did it receive efficient operation? Only by a doctrine of equity invoked to prevent fraud on the part of another devisee, who was willing to accept a part of the instrument, without being bound by its other provisions.

So here Sewall probably had a more certain reason for desiring Brinham's property than Mantz had for disposing of after acquired lands, because Sewall knew of Brinham's will, and was confident that he would not change it, a confidence which was not disappointed to those who were to take the property in Sewall's place. If Sewall had outlived Brinham, the two cases would have been the same, except that one devisor disposed of property he had reason to know would come to him or his donees, and the other devised all he had, or "of which he might be possessed at his death." In both instances they were devising what they did not own. If Sewall devised a mere possibility, as was contended, what was the subject of disposal in the other will, at the time the will was made? Mantz's will never became operative as a devise at law, but another Court, having little concern generally with legal titles, gave it effect by compelling the other devisee to elect between the two interests covered by the will. See *Webb vs. Earl of Shaftesbury*, 7 *Ves.*, 480; *Graves vs. Forman*, 3 *Ves.*, 67; *Highnog vs. Banner*, 1 *Bro. C. C.*, 584; *Wilson vs. Townsend*, 2 *Ves. Jr.*, 697; 2 *Story's Eq.*, sec. 1096.

But it is insisted that if this is not a case of equitable election, the will, taken as a whole, imposes a condition which Mitchell must comply with to entitle him to take under the will of his uncle, and having enjoyed these bene-

fits, this Court will prevent his claiming the other property. If the purpose, object and actual intention of Sewall, in regard to making a particular devise, would be violated and defeated by Mitchell not carrying out such object, it is a condition. 1 *White & Tudor*, 376 ; *Wilson vs. Arney*, 1 *Dev. & Bat. Eq.*, 376 ; *Melchor vs. Barger*, 1 *Dev. & Bat. Eq.*, 634 ; *McElfresh vs. Schley*, 2 *Gill*, 202.

If the terms of the will are such that he cannot take both interests without defeating the intention of the testator, there is a condition implied. *Wilson vs. Arney*, 1 *Dev. & Bat. Eq.*, 376.

The conscience of Mitchell was affected through Brinham, to abide by his uncle's will. Brinham took benefits under the will, and was himself bound to give it effect, by permitting his property, at his death, to go according to Sewall's will. If Brinham was bound, Mitchell claiming under Brinham's will, would also be bound, and whatever equity could have been asserted against Brinham, can be enforced against Mitchell. It makes no difference that the benefits were of small value. *Wilson vs. Lord Townsend*, 2 *Vesey, Jr.*, 697.

This whole doctrine of equitable election and implied condition, seems to be founded on the principle announced by Lord Chancellor TALBOT, in the case of *Streatfield vs. Streatfield*, 1 *Leading Cases, White & Tudor*, 333. When a man takes upon him to devise what he had no power over, upon a supposition that his will will be acquiesced in, this Court compels the devisee, if he will take advantage of the will, to take entirely, but not partially, under it, as was done in *Noys vs. Mordaunt*, there being a tacit condition annexed to all devises of this nature, that the devisee doth not disturb the disposition which the devisor hath made. 2 *Story's Eq.*, sec. 1077, note 1 ; *Dillon vs. Parker*, 1 *Swanston*, 396, *note ; Gore vs. Stevens, &c.*, 1 *Dana*, 203 ; *Smart vs. Easley*, 5 *J. J. Marshall*, 215 ; 1 *White & Tudor*, 289.

If Mitchell had elected against the will, equity would have treated him as a trustee for the two nieces, as to the value of Brinham's property; and as he has lost his property and the trust cannot be enforced, the Court will take his half of Brinham's estate instead.    2 *Story's Equity*, 1083, 1084.

*John B. Brooke* and *Daniel Clarke*, for the appellee.

Robert Sewall having died prior to William P. Brinham, the former was never possessed of any interest in the property devised to him by the will of Brinham, which was capable of being devised.    Sewall, up to the time of his death, had a bare possibility of interest in the estate of Brinham.

The doctrine of election does not apply to this case. First, because there is nothing to show any intention on the part of the testator to compel Henry S. Mitchell to make an election.    The degree of intention necessary to raising a case of election must plainly appear upon the face of the will.    *McElfresh, Admr. vs. Schley*, 2 *Gill*, 181.

Secondly. If Sewall intended that an election should be made by Brinham, the contingency upon which the election was to be made, never arose.    The clause in the will says:

"I give all the property, real, personal and mixed, which I may hereafter acquire by devise or bequest, from my friend William P. Brinham, by whose last will and testament as now executed, I am sole legatee and devisee." But Sewall died before Brinham, hence he never acquired any property, real, personal or mixed, by devise or bequest from Brinham.    The *very contingency* then upon which the election, if any, would arise, never occurred.

Thirdly. In *Tongue vs. Nutwell*, 17 *Md.*, 229, the Court say, if the latter devise or bequest be invalid; if the instruments in respect to it be legally inoperative and void, the former beneficiary's retaining his own property

does not defeat the operation of the instrument. . . . .
Retaining the subject of the transfer does not disappoint
the instruments, if the law has already avoided and nulli-
fied the transfer. In this case, a devise by Sewall of a
bare possibility, was invalid. 1 *White and Tudor's Lead-
ing Cases in Equity,* 65, *Law Library,* 375 ; *Jones vs. Jones,*
8 *Gill,* 197 ; *Smith vs. Townshend,* 27 *Md.,* 368.

Fourthly. The doctrine of election is, that a party can-
not take what is devised to him, and at the same time
what is devised to another, hence he must elect which he
will take of the two devises. *McElfresh, Admr., vs.
Schley,* 2 *Gill,* 181. Applying this principle, was any-
thing which Brinham had, devised or capable of being
devised by Sewall, either when Sewall executed his
will, or when the will took effect at his death? Might
not Brinham at any time have changed his will? Sup-
pose Mitchell had elected to abandon his interest under
Sewall's will, in order to take his interest in Brinham's
property, in the contingency that Brinham would not
change his will. Was there anything which would pre-
vent Brinham from changing his will? If not, Mitchell,
by being forced to elect, might lose both interests. A case
of election cannot arise, unless the party, by electing to
abandon one interest, is assured of another.

The property passes to Mitchell and Susan S. and Ellen
C. Daingerfield. See *Glenn, Admr. vs. Belt, Admr.,* 7 *Gill
& John.,* 362.

Bowie, J., delivered the opinion of the Court.

The question presented by the present appeal is, whether
the appellee, Henry S. Mitchell, a devisee and legatee
under the will of Robert D. Sewall, Esq., late of Prince
George's County, deceased, should be enjoined from prose-
cuting as an heir at law of said Sewall, his bill in equity
for the partition of certain lands devised by William P.
Brinham to said Sewall, and of which the latter is alleged

to have died intestate, and also from prosecuting as next of kin of said Sewall, a suit at law against the appellants, on the administration bond of Brinham's executor, for the recovery of a proportion of Brinham's personal estate; which lands and personal estate were intended to be devised by Sewall to the appellants.

It appears from the evidence in the cause that the late Robert D. Sewall, Esq., a gentleman of large estate, and unmarried, was the uncle of the appellee and the appellants, Susan S. Barbour and Ellen C. Daingerfield, the children of two deceased sisters, who were heirs apparent and next of kin of the deceased, and towards whom he stood "*in loco parentis.*"

It further appears that for many years previous there lived in the family of the deceased an aged lady, Mrs. Eleanor Brinham, and her son, William P. Brinham, for whom Mr. Sewall entertained great regard, and in acknowledgment of services rendered by them, conferred upon them large benefactions, by deeds of conveyance of real and personal property, subject to the life estate of the grantor.

Mrs. Brinham died in the year 1847, leaving her son, William P. Brinham, surviving. On the 12th of June, 1847, William P. Brinham, by his deed of that date, reciting the former deeds to his mother and himself of the 26th October, 1844, which were not to take effect until after the death of Sewall, and the death of his mother, and his own desire to surrender and re-convey all said real and personal estate to Robert D. Sewall, in fee, *in conformity* with the provisions of a contract, entered into between them for that purpose, on the 6th of February preceding; and that Sewall had on his part complied with its provisions, in consideration of the same, he, Brinham, released and re-conveyed to Sewall, all the real estate and slaves conveyed previously by Sewall to Mrs. Brinham and her son.

Simultaneously with the execution of the release, viz: 12th June, 1847, Sewall, in consideration of love and affection for Wm. P. Brinham, and divers other causes, conveyed to him absolutely sundry negro slaves.

On the 25th of January, 1847, in consideration of the sum of $1100, (which it is proved was paid by Sewall,) Messrs. George and Charles B. Calvert, conveyed to William P. Brinham, a part of a tract of land called his "Lordship's Kindness," containing —— acres.

It was further in proof that the lands conveyed by the Calverts adjoined the lands of Sewall; that Brinham lived on the lands of Sewall, and had no property, except that given or conveyed to him by the latter. Under these circumstances, on the 5th of March, 1852, William P. Brinham "being sick and weak in body," made his last will and testament, whereby he devised and bequeathed to his friend, Robert D. Sewall, all his real and personal estate in fee. Robert D. Sewall, on the 31st December, 1852, "being in perfect health," made his last will and testament, in which he appears to have designed to make an equal distribution of the great body of his estate, real and personal, between his nephew and nieces, share and share alike.

In the prosecution of this purpose he devised and bequeathed to Henry S. Mitchell, about 1000 acres of land; an equal share with his nieces, of all his silver plate, and one-third part of his negroes, besides certain lots in Carrollsburg, in the City of Washington.

To his nieces, Susan S. and Ellen C. Daingerfield, he devised 2000 acres of land, to be equally divided between them; and also devised to them, as tenants in common, "*all the property, real, personal or mixed, which I may hereafter acquire by devise or bequest from my friend William P. Brinham, by whose last will and testament, as now executed, I am sole legatee and devisee*, to be equally divided between them as tenants in common, share and share alike.*"

Robert D. Sewall died in the year 1853, leaving his will unrevoked, and William P. Brinham died in 1857, leaving his will unchanged and in full force.

The real and personal estate of Sewall was divided and administered pursuant to the provisions of the will of the testator; the several devisees and legatees being let into possession of their respective portions of the lands devised, (as far as the same were in the actual seizin of the testator;) and receiving their several shares of the personalty.

After Mr. Brinham's death, Henry S. Mitchell claimed as one of the heirs and next of kin of Robert D. Sewall, one-third of the real and personal estate devised and bequeathed to him by Brinham, insisting the same did not pass under the will of Sewall, but that he died intestate as to the same.

Mitchell filed his bill of complaint in the Circuit Court for Prince George's County, as a Court of Equity, against the appellants, claiming a partition of the lands of Brinham, and instituted proceedings at law against his administrator and his sureties, to recover a proportion of the personal estate of the deceased.

The appellants filed their cross-bill, praying that Mitchell might be enjoined from further proceedings in equity and at law, and required to convey his supposed interest in the real estate to the appellants.

The Court below decreed that the injunction heretofore issued at the instance of the appellants be dissolved, and their bill of complaint dismissed, with costs to the defendant, from which decree this appeal was taken.

The appellee admits in his answer, that Robert D. Sewall did in his last will, undertake to devise to Susan and Ellen Daingerfield, certain property he was expecting to acquire, under and by virtue of the will of William P. Brinham; but denies that the testator Sewall, ever acquired any estate or interest under the will of Brinham, capable of being transmitted by his last will; and insists,

that as Brinham survived Sewall, all the latter had, was a bare possibility of succession, which could not be assigned or be made the subject of a will. The appellants' theory is, that Mitchell having taken the lands and personal property devised and bequeathed to him by Sewall, in the distribution of his estate among his several heirs at law and next of kin, *pro rata,* is bound to acquiesce in the other devises and dispositions of said will, whether the subject-matter of those devises and bequests, was legally, or not within the testamentary power of the testator.

The defences or reasons relied on by the appellee, for exonerating himself from the obligation of election, rest rather upon the legal operation of the will on the subject-matter of the devise, than upon the intention of the testator.

The foundation of the doctrine of election, is a principle of natural justice. Spence, in his work on Equity, says, "the foundation of this doctrine is *the intention of the testator,* and its characteristic is, that by equitable arrangement, effect is given to a donation of that which is not the property of the donor ; a valid gift in terms absolute being qualified by reference to a distinct clause, which though inoperative as a conveyance, affords authentic evidence of intention. The intention being assumed, the conscience of the donee is affected by the condition (though destitute of legal validity,) not express but implied, annexed to the benefit proposed to him. To accept the benefit, while he declines the burden, is to defraud the design of the donor." 1 *Spence's Equity,* 639 ; *Story's Com. on Eq. sec.,* 1077. This very strong language, is corroborated by the American annotators of Leading Cases in Equity, in their notes upon the cases of *Noyes vs. Mordaunt and Streatfield vs. Streatfield,* 1 *Leading Cases in Equity,* 333. We quote from their synopsis, " The principle of election, is recognized and established in this country, almost exactly as in England. It rests upon the equitable ground, that no

man can be permitted to claim inconsistent rights, with regard to the same subject, and that any one who claims an interest under an instrument, is bound to give full effect to that instrument, as far as he can; a person cannot accept and reject the same instrument, or having availed himself of it as to a part, defeat its provisions in any other part, and this applies to deeds, wills and all other instruments whatever.''

''Election by implication in Equity depends upon the circumstance, that the same instrument which transfers or conveys certain property of the testator to one legatee or devisee, conveys or transfers certain other property to another legatee or devisee, and that the former beneficiary, availing himself of the instrument in one particular, must not defeat its operation in another.'' * * * *

''Again, it is said, a case of mere 'equitable election arises, where only the instrument or the operation of it, would be disappointed in part; if the *purpose, object,* and *actual intention of the testator,* in regard to making a particular devise or legacy would be violated, without the devisees or legatees carrying out such object and intention, *it is a condition.''  Ibid.* 306, 307.

There is much difficulty in the application of these principles to particular cases, and a great diversity of decisions in different States.

Where the instrument is void and inoperative because of legal incapacity in the maker, or informality in its execution, no election generally arises by implication, as in the case of a devise made by a *féme covert* or minor, but even in these cases it is said, the instrument may so clearly express its purpose, by way of condition, as to create a case of election.

The fact that Sewall, had no devisable interest in the property of Brinham, at the time of making the will or at the decease of the former, would not, it would seem upon principle, conflict with the doctrine of election, as

in the great majority of cases in which that doctrine has been applied, the testator undertook to dispose of property, over which he had no power of testamentary disposition.

This Court in the case of *McElfresh vs. Schley*, 2 *Gill*, 181, after a very careful and exhaustive argument, and examination of all preceding cases, applied the rule to the case of a will devising all the real estate of which the testator was possessed, *or of which he might be possessed* at the time of his death. After acquired lands, at the period at which that case was tried and determined, were as absolutely beyond the testamentary power of the testator, as lands which were only potentially, or never might be his; yet the clear intention of the testator in that case, to dispose of the real estate he *might acquire*, although legally impossible *"in presenti,"* was held to constrain his other devisees to abide by that devise, or renounce *"pro tanto"* the devises in their favor.

After referring to the leading English cases, showing the doctrine was applicable to the heir at law, who takes by descent (and is therefore favored by law,) as well as to others taking by purchase, this Court based their decision in the strongest terms, upon the foundation of the intention of the testator. They said, "In the case of an express condition, there never could have been a doubt, because a testator may annex what condition he pleases to his estate. Why should not election occur in the case of an implied condition, if the intention be plain and clear as against the heir? * * * *

"It is only carrying out a plain intent of the testator, and giving to the residuary devisee, that which the testator intended, and forbidding the heir from taking property not designed for him.

"From the earliest case on the subject, the rule is that a man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument.

"If he claims an interest under an instrument, he must give full effect to it, as far as he is able to do so. He can-

not take what is devised to him, and at the same time what is devised to another; although but for the will ·it would be his; hence he is driven to his election to say which he will take." 2 *Gill*, 200, 201.

The fact, that the will was inoperative to convey after acquired lands, was held to be no bar to the application of the doctrine of election, the will being executed so as to pass real estate, and therefore competent evidence, and the intention of the testator thereby clearly indicated.

The only perceptible difference in this aspect of the subject between the case of *McElfresh vs. Schley,* and the case before us is, that in the former, at the time the will was executed, no particular real estate was in the mind of the testator, and in the latter, certain specific property which he knew was devised to him, was the subject of his will. In the former, the property intended to be devised by the will, had no local habitation or name; in the latter, the property was certain, known, capable of being estimated, and in all probabilty was taken into actual consideration, in providing for his several devisees and legatees, and making a distribution between them, share and share alike.

The parties in interest in the former case, were sisters, children of the testator, and if he had been declared to have died intestate, as to the after acquired lands, would have succeeded as heirs at law equally to them, share and share alike. In the latter, the parties in interest, are nephew and nieces, standing relatively in the same degree to the deceased, and entitled to the estate in controversy in equal proportions.

In the former case, the question was between an heir and a *residuary* legatee. In the latter, between an heir and specific devisees. Where there was a general residuary devise there could be only a general intention, where there is a specific devise, there must be a special and particular intention, and anything which would defeat the latter,

must not only defeat the instrument, but set aside and violate the will of the testator.   The will of Sewall, as clearly indicates his intention to devise the Brinham property, to the appellants, as the will of Mantz did to devise his after acquired lands to his residuary devisee.   There is no doubt as to the intention of the testator ; Mitchell cannot divest the nieces of this portion of his uncle's estate, without taking, not only what was not intended for him, but taking that which was designed for another, and defeating the design of his testator, and benefactor.   The appellee relies upon the cases of *Tongue vs. Nutwell,* 17 *Md.,* 229 ; *Jones vs. Jones,* 8 *Gill,* 197 ; *McLaughlin vs. Barnum,* 31 *Md.,* 425 ; *Smith vs. Townshend,* 27 *Md.,* 368, *and* 1 *White & Tudor's Leading Cases,* 375, (65 *L. L.*) to support his theory, that if the latter devise or bequest be invalid,—if the instrument in respect to it, be legally inoperative and void— the former beneficiary's retaining his own property, does not defeat the operation of the instrument ; nor disappoint the instrument, since the law has already avoided and nullified the transfer.   As we have before intimated, there is a class of cases where the invalidity of the devise prevents the application of the rule or doctrine of election, but those cases are peculiar, such as where the will is not executed so as to pass real estate, or by persons not "*sui juris,*" for which see the notes to *Noyes vs. Mordaunt,* 2 *Vern.,* 581, and *Streatfield vs. Streatfield,* 1 *Leading Cases in Eq.,* 333.   But the American annotators cite with commendation, the case of *McElfresh vs. Schley,* as establishing the true doctrine as to the obligation of election arising under a will duly executed to pass real estate, in opposition to cases in other States.   Whatever may be the law elsewhere, if *McElfresh vs. Schley* has not been overruled by subsequent decisions, it is the law of this State.

We shall therefore briefly examine the subsequent cases cited by the appellee in this connection.   The case of

*Tongue vs. Nutwell,* 17 *Md.*, 212, was an ejectment brought by the residuary legatee against the defendant, who claimed under a prior devisee in remainder, after an indefinite failure of issue of the tenant for life. The limitation over, being void, (as decided in 13 *Md.*,) Mrs. Anne Tongue (who also took other lands under the will,) claimed those limited over after the failure of issue, as heir at law. The defendant insisted that having taken other lands under the residuary clause of the will, and personal estate specifically devised to her, she was bound to elect as between the different items of the will, and acquiesce in the devise over to John Harrison, the remainderman, under whom the defendant claimed. This Court rejected the defendant's prayer to the above effect, declaring they did not consider the question of election as involved in the case; that the conduct of the plaintiff's lessor, indicated neither an intention to defeat any provision in her father's will, nor by taking under it, did she manifest the purpose of making her election. In illustration of their views, they quoted a paragraph from *White & Tudor's Leading Cases,* before referred to, as cited by the appellee, showing that where the instrument was invalid there was no election, concluding thus, "Retaining the subject of the transfer, does not disappoint the instrument, if the law has already avoided and nullified the transfer. This occurs in the case of a devise of land *by a fême covert or an infant, or under a will not executed, so as to pass land.* There is in such cases, no election from *implied* intention." "This Court decided in the former case of *Tongue vs. Nutwell,* 13 *Md.,* 415, that the provisions in the will, in relation to the property now in controversy, were void by operation of law."

It is inferred from the adoption of the extract from *White & Tudor,* in connection with the remark, that the Court had decided in the former case of *Tongue vs. Nutwell,* 13 *Md.,* 415, that the provisions in the will in relation to the property now in controversy were void by operation of law,

this Court meant to announce as a general principle, that no election would occur in cases of wills void by operation of law, from *implied intention.*

Such is not, we think, the necessary deduction from the premises. Independently of the fact, that the case of *Tongue vs. Nutwell* was a case at law, where the Court has no direct remedy to compel election, and the principle operates, if at all, by way of estoppel, *(vide Story's Eq., sec.* 1080, *note* 2,) the paragraph cited, did not lay down a general, but a special rule; the conclusion was, "there is in such cases, no election from implied intention." Cases *"ejusdem generis"* were intended.

McElfresh and Schley, although cited by the appellee's counsel as conclusive on that point, was not referred to by the Court in its opinion.

We cannot suppose the Court meant to reverse and over-rule so solemn an adjudication by implication. If there is any inconsistency in the two decisions, we must suppose the latter was determined by its special features, it being classed by the Court within an exceptional, rather than a general rule. In *Tongue and Nutwell*, the devise was avoided by the policy of the law. To give effect by election, to a will whose provisions contravene the policy of the law, would be preferring private interests to the public good; but where no principle of public policy is violated, the doctrine of election conduces to equality and justice.

The case of *Jones vs. Jones*, 8 *Gill*, 203, is another instance of a peculiar class of cases, in which no election arises by implication. The will was executed in Pennsylvania, according to the laws of that State, but not in conformity with those of Maryland relating to real estate. Referring to which the Court said, "A will of lands that is not executed and attested according to our statutes, can create no election as to lands here from implication; for the reason given, that such an instrument is no will here, and therefore inoperative." 8 *Gill*, 206. In the case of *Smith, Ex'r*

*of Hoye, etc., vs. Townshend,* 27 *Md.,* 368, it was held there was no evidence of an intention on the part of the testator to devise the property in controversy.   The case last cited by the appellee, *McLaughlin vs. Barnum,* 31 *Md.,* 425, presents no feature at all similar to the present.

The Court in that case expressly negatived the pretension, that the property in that case passed by election, on the ground of want of intention.   They said there was no operative clause of the will which embraced it ; on the contrary, the intent not to include it was apparent from other provisions.

It is urged by the appellee, that the doctrine of election does not apply where the right to one of the subjects of election is contingent, that a case of election cannot arise, unless the party by electing to abandon one interest, is assured of another ; that Brinham might have altered and revoked his will, in which event the party electing that property might lose both.

We find no authority for this position, except a paragraph in 2 *Maddock's Chy.,* 52, where it is said, "An election can only take place where a person has a decided interest before, and something is left to him by will ;—where there is no certain benefit before, there can be no election," for which he cites *Crosbie vs. Murray,* 1 *Ves. Jr.,* 555.   In that case the testator executed a bond to his nephew, reciting that he had by his last will bequeathed to him a certain sum, and bound himself to pay to the nephew an annuity for the life of the obligor, and until the legacy should be paid.   In a subsequent will the obligor revoked the former legacy, and bequeathed to his nephew a smaller sum "over and above the annuity of £150, which I have secured to him for his life ;" the bond was assigned by the nephew to his mother.   Upon an inquiry before the Master in Chancery, whether the last legacy was a satisfaction or ademption of the annuity, Lord Commissioner Ashhurst said he had at first entertained doubts whether the testator meant to give

his nephew, by his last will, more than the arrears of the annuity which might have accrued, but when he came to read the words " *which I had secured to him for his life*," that made an end of the difficulty. " As to the question of election, my opinion is, it never can arise; because election can only exist where a person has a decided interest before, and something is left to him by will, which may be then perhaps held to be a compensation. But here there was no certain benefit before; but on the contrary, the annuity was to determine on the death of Muir, (the testator;) and therefore Hilliard can only take this as a circumstantial gift, as it is to be collected from the whole will taken together, that that benefit was intended to be given him." 1 *Ves., Jr.*, 561.

However correct as a general proposition, the position, that there can be no election where there is no *decided* interest, it is not universally true, nor consistent with the principle on which the doctrine of election rests, "that he who accepts a benefit under a deed or will is bound to confirm the whole instrument, conforming to all its provisions, and renouncing every right inconsistent with them; no one is allowed to frustrate an instrument under which he claims." 2 *Spence Equity*, 586.

The learned annotator of the case of *Dillon vs. Parker*, 1 *Swanston*, 400 says : "The foundation of the equitable doctrine of election, is the intention, explicit or presumed, of the author of the instrument to which it is applied, and such is the import of the expressions by which it is described as proceeding, sometimes on a tacit, implied or constructive condition, sometimes on equity. From this principle the whole doctrine with its distinctions and exceptions is deduced. The term 'equity,' it is said, denotes the obligation affecting the conscience of the donee, to perform the intention of the donor, whose bounty he accepts, by fulfilling the condition of the gift." *Note (f.)* Referring to the *quantum* of interest, in the subject of election,

in the notes to the same case, 406, the annotator remarks, Lord HARDWICKE appears on one occasion to have entertained the opinion, that the doctrine of election is not applicable to interests in remainder after an estate tail. *Bor vs. Bor*, 3 *Bro. P. Ed. Toml.*, 178 *n*; and the Court of Exchequer in Ireland deliberately adopted that conclusion, *Stewart vs. Henry, Vern. & Scriv.*, 49, on the ground that "in cases of wills, things are to be taken as they stood at the testator's death," and that if at that time the remainder-man had been directed to confirm the devise, as far as he could, by levying a fine, in order to bar his issue, the tenant in tail might the next moment have barred all the remaindermen, and such a decree, therefore, would have given no substantial benefit. The principle of this exception seems extremely questionable; the doctrine of election is applied to interests, in respect, *not of their amount*, but of their inconsistency with the testator's intention; and to assume their remoteness, or their value, as a criterion of the existence or absence of that intention, would introduce that uncertainty which on questions of property, is, perhaps, the worst defect of law. Accordingly the doctrine of election has been declared to be applicable to interests immediate, remote, contingent, of value, or not of value. 2 *Ves., Jr.*, 697. In *Graves vs. Forman, cit.* 3 *Ves.*, 67, Lord HARDWICKE seems to have applied it to an estate for life in remainder after estates tail; and see *Highway vs. Banner*, 1 *Bro. C. C.*, 584; see also 2 *Story's Eq., sec.* 1096; 2 *Spence Eq.*, 588.

Although the time of making an election is usually upon the death of the testator, when the several interests in the subject-matter of devise or deed are contemporaneous and co-existent; yet, if from the peculiar circumstances of the case, the interests which were before only potential, become vested in the parties, as heirs and next of kin of the deceased, after his death, the principles of equity, which compel the devisees and legatees, or grantees, who take a

benefit under a will or deed, to conform to, and abide by all its provisions, apply as strongly in the one case as the other. The inconsistency of their conduct, with the testator's intention, which is the ground of equitable interference, is not less, because postponed to a period long after the instruments were executed.

The potential rights of Sewall, in the property of Wm. P. Brinham, were as valuable as the rights of a remainderman, dependent upon an estate tail.

The power of the tenant in tail, to destroy the remainder, was as complete, as the power of Brinham to revoke his will.

The interests of Sewall in the estate of Brinham, although not transmissible by Sewall's will, was yet such an interest as the heirs and next of kin of Sewall could only claim through him, and such an interest as was recognized by law, and protected from lapse by special legislation.

The consequence of the conclusions we have reached is, that the decree below should be reversed, and the appellee enjoined from further prosecuting his bill in equity, and suit at law, against the appellants. Decree reversed with costs to the appellants in this Court and the Court below, and cause remanded, that further proceedings may be had in conformity with this opinion.

*Decree reversed, &c.*

(Decided 8th May, 1874.)