# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed January 7, 1904.

———

## ALEXANDER BROWN ET AL.
### VS.
### COLGATE N. SMITH ET AL.

———

*Brown, Marshall, Brune & Thomas* for plaintiffs.

*W. Irvine Cross, J. J. Alexander, George R. Willis* and *James McEvoy, Jr.,* for defendants.

BAER, J.—

This case was argued late in the term, and in order that the case may

reach the Court of Appeals at the next term, I have only time to briefly state the conclusions I have reached, with some reference to the authorities.

I am of opinion that the second and fifth clauses of the will of Mrs. Greenway are void, because they violate the rule against perpetuities, as laid down in Maryland, beginning with the Barnum case. This is expressly admitted as to the second clause in the answer filed by the guardian on behalf of Isabella Graham. While it is denied, as to the fifth clause, in the answer filed on behalf of Colgate N. Smith and others, it was not seriously controverted at the argument.

The question is, does the fact that these two clauses, in attempted execution of the power, are void, render also void the other clauses in execution of the power, which are in themselves valid, so that the whole property passes under the will of George Brown, the donor of the power?

The answer to this question in Maryland seems to be found in the case of Albert vs. Albert, 68 Md., 352.

In that case Augustus J. Albert made his will in execution of the power given in the will of his father, Jacob Albert. He divided his estate into eight shares. One of these shares he gave to trustees for his granddaughter, Mrs. Winchester, and two-fourths of another share he gave to trustees for two other granddaughters, for life, with remainder over.

The Court decided that these trusts were void under the rule against perpetuities in this State. The Court further held that the other appointments were not obnoxious to this objection.

The Court further, p. 373, says: "It is insisted * * * that in consequence, as part of the settled property is embraced, they (that is, these trusts for the grandchildren,) offend against the rule prohibiting perpetuities, and that the entire attempted execution of the power by Augustus J. Albert is, therefore, wholly void; whereby under the third clause of Jacob Albert's will, the children and grandchildren of Augustus J. Albert took a vested absolute estate in the settled property.

It is undoubtedly true that where bequests are made to a class, and some of the class are *in esse*, and capable of taking without violating the rule, and some are not, the whole bequest must fail for the very conclusive reasons

given by Sir William Grant in Leake vs. Robinson, 2 Merid., 390, quoted with approval in Goldsborough vs. Martin, 41 Md., 501. But where the bequests have been made to individuals, some of whom are capable of taking and some of whom are not, a different consequence follows."

This principle is laid down in Lewis on Perpetuities, 494, and in 2 Sugden on Powers, 202.

It was directly applied in the case of Bristow vs. Ward, 2 Ves., p. 350, where Lord Loughborough said: "The next question is whether the whole, being defective as to part, should be totally set aside and the fund be distributed as in default of appointment. It is contended that if it can not take effect in the manner the distribution was made by the testator, the question will be what he would have done if he had been apprised that, in part, failing, there would arise an inequality unforeseen by him as to his children.

The answer is, nobody can tell what he would have done, but that is not a ground for setting aside the whole, for each child to whom he has well appointed has a right to claim that; for instance, John Bristow, who has £2,000; the Court has no right to take that away. There is no reason to say to them: "You shall not take this because the intention as to the rest can not take effect. There is no ground to rescind the gifts to them of their parts. I asked whether there was any case, where the whole was set loose and distributed, as if no appointment had been made, because part of the appointment was void; that proposition is, therefore, untenable, that in case of a flaw in the execution as to part, the whole must be void. All that is well appointed will stand."

Indeed, it is hardly necessary to refer to these authorities when the question is directly decided in Albert vs. Albert, supra, which must control the decision here unless there is a subsequent decision of the Court of Appeals, overruling Albert vs. Albert.

There is no case directly overruling it, for in the case relied upon, Myers vs. Safe Deposit and Trust Co., 73 Md., 413, Albert vs. Albert is not referred to. The Myers case was decided shortly after the Albert case and the same four judges sat in both cases, and certainly there could have been no intention to overrule a case so re-

cently decided, after such careful consideration as the opinion shows was given to it, without even mentioning it.

In the Myers case the will of the donor declared that, "immediately from and after the death of my wife, my will is * * * that the residue of my estate shall pass to and become the property of such of my children, or grandchildren, or either, as she, by last will, shall have named and appointed to take the same."

The donee attempted to exercise this power by appointing three-ninths to a son and one-ninth to a grandson of the testator absolutely. She created trusts for life as to the remaining five-ninths of the estate, with remainders over.

The Court of Appeals decided, in the first place, that the trusts created as to the five-ninths of the property were void, and that they were void, not because they violated the rule against perpetuities, although they may have done so, but because under the special and limited power which the donee had, a trust could not be created at all.

In regard to this power the Court says, "It is very clear to our minds that the testator designed whoever the wife nominated to take an absolute estate in the personalty, and fee in the realty. He gives the wife the simple power to name who shall take the estate, and she is given no power by implication to create a trust, and name a stranger to take the title and hold in trust for the beneficiaries she shall name." 'Upon their face' these (the three-ninths which she gave absolutely) are good appointments, but as to the other five-ninths of the estate she created trusts for life with remainder over, which we have decided are not warranted by the power, and that part of the estate, being unappointed effectively must pass as if Charles Myers had died intestate."

The Court then considers the question whether the well executed appointments of four-ninths fail, because of the failure of the donee to well appoint the five-ninths.

The Court recognizes the general rule, "ordinarily, according to Mr. Sugden in the 2nd volume of his work on Powers, p. 202, the well appointed portions stand, and such appointees are not to be excluded from shares of the unappointed part, if they belong to the class taking because of the default."

The Court goes on to say, however, that the cases referred to were "settlements where the donee of the power has more discretion in the matter than Mrs. Myers, who has the bare power of designation, which is given her by will, and her execution of the power is also by will. The intention of the testator, therefore, becomes a subject of inquiry, and controlling importance."

The Court then goes on to show that the power was a narrow one, to appoint the whole estate absolutely, and because she had not done this, there was no valid execution of the power at all. The case is distinguished from Torrance vs. Torrance, 4 Md., 12, because the powers were not the same.

No reference, as has been said, was made to Albert vs. Albert, but recently decided.

The Myer's case has been very recently reviewed by the Court of Appeals, the opinion being published in *The Daily Record* of January 5, since the argument in this case, in which the Court says: "By the express terms of the will of Charles Myers, immediately upon the death of his wife, all the residue of his property, i. e., the absolute and unqualified estate, was to pass to and become the estate and property of such of his children and grandchildren, or either, as she, by her last will and testament should nominate and appoint. In that case the discretion was restricted to the objects of the appointment. Having made the authorized selection, she had no right or power to give to the person or persons, so selected, anything less than an absolute estate."

Under this state of the decisions the present case must be ruled by Albert vs. Albert, if the power in the present case is in terms similar to the one in that, and not similar to the one in the Myers case.

In the Albert case the power was in these words: "May by their last will and testament devise and bequeath to their legal heirs (which the Court decided in this will meant children), their executors and administrators, either in trust or absolutely, the property, real and personal, left in trust for their use and benefit, as in their discretion and judgment they, or either of them, may deem proper and right in the division and distribution of the said property, real and personal."

Under this 'power the Court of Appeals said that the appointments that were good stood, although others failed because they violated the rule against perpetuities.

It seems to me that I am bound to say the same thing in this case, when the power given in the will of George Brown to Mrs. Greenway is in these words: "That is to say, to, and for such of my other children, or their descendants or descendant, and in such proportions, and for such estate and estates therein, either in fee, or for less estate, and with such limitations and conditions as my said daughter, Grace Ann, may by her last will and testament, or by any instrument of writing, in the nature of a last will and testament (notwithstanding any coverture she may be under), executed in the presence of three or more witnesses, name, limit and appoint, to take the same."

It follows that the bequest of $100,000 to Elizabeth C. Whitridge, and the bequest of $20,000 to Harriet and Bessie Brown, are valid, and that the balance of the estate must pass under the provisions of the will of George Brown.

Another point upon which I asked the counsel to present their views, was whether, Elizabeth C. Whitridge, being one of the parties also would be entitled to a part of the balance of the estate, was put to an election to say, whether she would take the bequest to her and give up her share in the residue, or take the latter and give up the bequest.

The conclusion I have reached upon the authorities is that she is not put to such an election.

The leading · case in Maryland is McElfresh vs. Schley, in 2 Gill., 136.

It was· there decided that, although the will was not effective to pass to the residuary devisee realty acquired after the will had been made, which the will attempted to give, devisees of other property under the will would not be permitted to take what was given them by the will, and also claim as heir the after acquired property, given in terms by the will to the residuary devisee.

The same thing was decided in Barbour vs. Mitchell, 40 Md., 151.

In Tongue vs. Nutwell, 17 Md., 212, it was decided that where a devise of land *is void by operation of law*, an heir-at-law is not estopped from claim-

ing his interest in the land so devised, by the fact that he took other devises and bequests under the will; that the doctrine of election does not apply in such a case, for, by taking such other devises and bequests, he manifests no intention to defeat any provision of the will, nor to make an election. The devise in that case was void by operation of law, as in this case, because of a violation of the rule against perpetuities.

In the Barbour case, in 40 Md., 151, the Court of Appeals reviews Tongue and Nutwell.

The fact that it was a case at law is adverted to, where no direct remedy exists to compel an election, but the Court distinguishes it by saying that the "devise was avoided by the policy of the law. To give effect by election to a will, whose provisions contravene the policy of the law, would be preferring private interests to the public good, but where no principle of public policy is violated, the doctrine of election conduces to equality and justice. And this is in accord with what is said by Vice Chancellor James in L. R. 8 Eq., 165, "it is also material that the reason why the gift fails is, that there was an attempt to create a power in violation of the rules of law (creating a perpetuity). I apprehend that it is not for this Court to aid such an attempt, either by the application of the doctrine of election or otherwise."

This direct question was decided in the case of Bristow vs. Ward, 2 Ves., p. 350, already quoted on the other point. The Chancellor said: "The consequence is the remainder must be divided as in default of appointment, unless it will hold, as argued, and I do not know how to state it as to this case, that a person to whom a specific share is appointed, shall be excluded from taking any of the unappointed share, because it is clear the father meant he should have no more than what was particularly given. The doctrine of election can not apply where there is no other subject but that to be appointed.

"It can never be applied but where, if an election is made contrary to the will, the interest that would pass by the will can be laid hold of to compensate for what is taken away; therefore, in all cases there must be some free, disposable property, given to the person, which can be made a com-

pensation for what the testator takes away. That can not apply to this case where no part of his property is comprised in the will but that which he had the power to distribute."

In 27 Beav., 362, this case is cited with approval. There a testator had a power of appointment over an estate to his children and grandchildren, and also a power of appointment of a fund among his children only. He appointed the estate to some of his children, and the fund to his children and to a grandchild, who could not be an appointee. The Master of the Rolls, Sir John Romilly, said: "On the best consideration I am of opinion that it does not raise a question of election. A case of election arises where a testator, whether under a power or not, gives property which belongs to one person to another, and gives to the former, property of his the testator's; in that case the former is bound to elect whether he will give effect to the disposition of his own estate in favor of the latter, and if he will not, then he can not take any of the benefits intended for him by the will, and which are thereupon made available for compensating the disappointed legatee or devisee.

"This is not the case here for there is no property of the testator. If the testator has improperly exercised the power, as that the property will go as in default of appointment, it will be divisible amongst the seven children, five of whom only take benefits under this will; the other two are not named in it: It is impossible to say that there is a case of election as to the two who take nothing under the will, and it is equally as to the others."

It was admitted in this case that a man, having property of his own and a power of appointment over other property, may, by giving his own property to the objects of the power, put them to their election, either to give effect to the whole disposition, or reject the benefits in the property not subject to the power.

This was decided in the case of Whistler vs. Webster, 2 Ves., p. 357, and, as I understand the case, also decided in Albert vs. Albert. There, Augustus J. Albert blended his own property with that over which he had power of appointment.

The granddaughters and some of the sons to whom life estates with remainders over, in both classes of property, were given, claimed that the will was void as far as the settled property was concerned, and that they took this property absolutely under the will of Jacob Albert, the donor of the power. The Court of Appeals said, they would be required "to make election, whether they would take absolutely, under the will of Jacob Albert, their proportion of the settled property and relinquish all claim to participate in Augustus J. Albert's estate, or to abide by the will of the latter in its entirety.

The rule that no election is required where the will only deals with the property to be appointed is recognized in the Myers case in the quotation already given that the "well appointed portions stand, and such appointees are not to be excluded from shares of the unappointed part, if they belong to the class, taking because of the default."

It was admitted in the argument that the term "next of kindred" in the will of Grace Brown means the nearest blood relations of Mrs. Greenway, and that Elizabeth G. Whitridge and Alexander Brown, being such, are entitled to the property held in trust for Mrs. Greenway under the will of Grace Brown.

I will sign a decree in conformity with this opinion.

✦

# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 27, 1904.

Appeal, March 2, 1904.

Appeal dismissed February 25, 1905.